# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>WILBUR ROSS, et al.,<br><br>        Defendants,<br><br>and<br><br>NEW ZEALAND GOVERNMENT<br><br>        Defendant-Intervenor. | Civil Action No. 1:20-cv-00112-GSK<br><br>Before: Judge Gary S. Katzmann<br><br>Plaintiffs' Motion for Leave To Supplement Evidentiary Record on Renewed Motion for a Preliminary Injunction |

Having considered Plaintiffs' Motion for Leave To Supplement Evidentiary Record on Renewed Motion for a Preliminary Injunction, the Court hereby **GRANTS** the Motion.

The Court will supplement the evidentiary record before it on Plaintiffs' Renewed Motion for a Preliminary Injunction with (1) the results of the 2020-2021 Māui dolphin population survey; (2) the Third Declaration of Professor Elizabeth Slooten interpreting those survey results; and (3) a "Review of Sustainability Measures for Snapper (SNA 8) for 2021/22" published by Fisheries New Zealand. The Court further orders the Defendant-Intervenor to submit a copy of the 2020-2021 Māui dolphin population survey report for the Court's review within five (5) business days of this Order.

Signed at _____, this \_\_\_\_\_ day of _____, 2021.

_____
Judge Gary S. Katzmann

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>WILBUR ROSS, et al.,<br><br>　　　　　Defendants,<br><br>　and<br><br>NEW ZEALAND GOVERNMENT<br><br>　　　　　Defendant-Intervenor. | Civil Action No. 1:20-cv-00112-GSK<br><br>Before: Judge Gary S. Katzmann<br><br>Plaintiffs' Motion for Leave To Supplement Evidentiary Record on Renewed Motion for a Preliminary Injunction |

# MOTION

Sea Shepherd New Zealand and Sea Shepherd Conservation Society (collectively "Plaintiffs") move this Court for leave to supplement the evidentiary record before the Court on Plaintiffs' Renewed Motion for a Preliminary Injunction. Plaintiffs bring this Motion because important evidence concerning the status of the Māui dolphin was the subject of a recent public disclosure. Specifically, on August 27th, in response to a New Zealand news media inquiry, the Defendant New Zealand Government ("NZG") acknowledged **the results of a 2020-2021 population survey for the Māui dolphin finding that the median population had dropped 14% from 63 to 54 individuals.** *See* Third Declaration of Brett W. Sommermeyer ("Third

Sommermeyer Dec."), ¶¶ 2–5 & Ex. 2.[1] This survey was conducted by the Auckland and Oregon State Universities in conjunction with the NZG. Third Sommermeyer Dec., ¶ 5 & Ex. 2. Of great concern, the actual number of Māui dolphins is likely less than 50 animals. *See* Third Declaration of Professor Elizabeth Slooten ("Third Slooten Dec."), ¶ 6.

The news of this decline is distressing enough on its own but also comes at a time when the NZG has announced a proposal to significantly increase commercial trawl and set net fishing in Māui dolphin habitat on the west coast of the North Island. Third Sommermeyer Dec., ¶ 7 & Ex. 4;[2] Third Slooten Dec., ¶ 8. If approved, the increased quotas are scheduled to apply to the new fishing season commencing in October 2021. Third Sommermeyer Dec., Ex. 4, at 1.

The evidence of declining Māui dolphin numbers and proposed increased fishing effort in its habitat is highly relevant to the Court's pending decision concerning the preliminary injunction and was not reasonably discoverable by Plaintiffs before oral argument on the injunction motion. Plaintiffs submit this Motion in accord with Rule 1, which requires an interpretation and application of the rules to "secure the just, speedy, and inexpensive determination" of matters before the Court. U.S. CT. INT'L TRADE R.1-1.

---

[1] Exhibit 2 is an email sent from New Zealand Department of Conservation officials in response to a news reporter's inquiry. The email is authenticated based on its distinctive characteristics and the surrounding circumstances and is a non-hearsay statement by an opposing party. FED. R. EVID. 901(b)(4) (authentication based upon "Distinctive Characteristics and the Like") & 801(2) (non-hearsay as an "Opposing Party's Statement"); *see also United States v. Safavian*, 435 F. Supp. 2d 36, 40 (D.D.C. 2006) (describing authentication of electronic messages under Federal Rule of Evidence 904(b)(4)).

[2] Exhibit 4 is admissible as a self-authenticating official publication and as a government report within the public records exception to the hearsay rule. FED. R. EVID. 902(5) (self-authenticating "Official Publication") & 803(8) ("Public Records" exception to hearsay rule); *see also Apalachicola Riverkeeper v. Taylor Energy Co., L.L.C.,* 113 F. Supp. 3d 870, 881 n.52 (E.D. La. 2015) (observing that reports taken from public websites fall within the "public records" exception to the hearsay rule and are self-authenticating under Rule 902(5)). It may also be considered non-hearsay as a statement by an opposing party. FED. R. EVID. 801(2).

Plaintiffs' Motion is supported by the Third Declarations of Brett W. Sommermeyer and Professor Elisabeth Slooten, filed contemporaneously with this motion, and any attachments thereto. Plaintiffs conferred with counsel for the Federal Defendants and the Defendant-Intervenor NZG, and they declined to take a position until after an opportunity to review Plaintiffs' motion.

**ARGUMENT**

**Māui Dolphin Population Size and Trend Are Central to Plaintiffs' Motion for a Preliminary Injunction and Defendants' Opposition Thereto**

On December 11, 2020, Plaintiffs filed their Renewed Motion for a Preliminary Injunction respectfully requesting that this Court order Federal Defendants to impose a ban on New Zealand's fish imports from gillnet and trawl fisheries operating within the range of the critically endangered Māui dolphin. Dkt. 49. Notably for the present Motion, two of the core issues presented in Plaintiffs' injunction briefing and supporting scientific declarations are the strong evidence of the substantial (and continuing) decline in the dolphin population from 2000 to 57 individuals and the significant dangers posed by set net and trawl fishing to dolphin populations of this small size— especially considering the Māui dolphin's inherent biological vulnerabilities. *See* Dkt. 49, pp. 3, 5, & 38. Accordingly, the new evidence of a further decline by 14% or more in less than two years and the announced intention to increase snapper fishing in the dolphin's habitat only serve to strengthen Plaintiffs' arguments in favor of an injunction and highlight the critical need to encourage more protective action by the NZG now before it's too late.

In responding to Plaintiffs' injunction motion, Federal Defendants and the NZG similarly made the population status of the Māui dolphin—e.g., the number of individuals in the current population, the historical numbers, the extent of decline, and whether the decline were continuing—a central issue. However, they did so for a different reason: to dispel any notion that

the population was falling toward extinction due to mortality in fisheries bycatch but was, rather, recovering.

As part of this strategy, the NZG argued in its opposition brief that defendant National Marine Fisheries Service ("NMFS") had properly rejected Plaintiffs' dolphin mortality estimate. As a partial basis for its position, the NZG claimed NMFS reasonably concluded that the population decline upon which Plaintiffs rely for their estimate "was offset by its finding, after reviewing the various abundance estimates, that 'the population may have stabilized or begun to increase in recent years following a decline in the past 20 to 30 years.'" Dkt. 55, at 18. The NZG then further contended that NMFS was reasonable in using a population estimate of 63 dolphins to calculate the Potential Biological Removal Rate ("PBR") because it "was the most recent abundance." *Id.* at 19. For both claims, the NZG cites to NMFS's October 2020 Comparability Finding.

Of relevance to this Motion, the Comparability Finding pages referenced in support of the above-described claims by the NZG made the same general assertion: **"Māui dolphin demographic models now estimate that the population may have stabilized or begun to increase in recent years following a decline in the past 20 to 30 years."** Dkt. 40-2, at 6 & 19. Moreover, NMFS based this statement exclusively upon the NZG's Application for a Comparability Finding. *Id.* The cited page of the Application states (without a supporting scientific reference): "Māui dolphin demographic models estimate that the population may have stabilised or begun to increase in recent years following a decline in the past 20 to 30 years." Dkt. 49.1, Ex. 5, at P-053. The NZG found this news to be "encouraging" despite overlapping confidence intervals. *Id.* at P-054. Thus, NMFS and the NZG made precisely the same claims that mortality estimates and PBR must be based upon the "most recent" abundance estimate of 63 and that the

resulting calculations supported their core argument that Māui dolphin populations are likely recovering under the current management scheme—further claiming that a preliminary injunction was, therefore, unnecessary. *See, e.g.*, Dkt. 55, at 52–54; Dkt. 57, at 31–33.

The above statements demonstrate that the population size and trend evidence is central to Federal Defendants' and the NZG's opposition to Plaintiffs' requested injunction. This fact is further illustrated by NMFS's October 2020 Rejection of Petition and Issuance of Comparability Findings, wherein it stated no less than three times that "Māui dolphin demographic models now estimate that the population may have stabilized or begun to increase in recent years following a decline in the past 20 to 30 years." Dkt 40-1, at 6, 9, & 13. NMFS uses this assertion – grounded in the 2015–2016 abundance estimate showing a median population of 63 – as support for two primary claims. First, that this more robust (and possibly increasing) population is not as vulnerable to fishing threats as claimed by Plaintiffs and the Marine Mammal Commission. *Id.* at 8–9. Second, that this population evidence supports the higher maximum net productivity rate (Rmax) calculated by New Zealand and, thus, the calculation of a higher PBR. *Id.* at 13.

The centrality of the Māui dolphin population status to Plaintiffs' injunction motion coupled with Federal Defendants' and the NZG's strong reliance on the previous abundance estimate of 63 dolphins as support for their core claims highlight the critical importance of the lower estimate of 54 contained in the new report. Yet, the situation is likely much more dire and, therefore, of even greater relevance to Plaintiffs' requested injunction and the viability of Defendants' arguments against it. In particular, this number may be positively biased because it does not account for dolphin mortality between 2020 and 2021. Third Slooten Dec., ¶ 6. Accordingly, the actual median population estimate is probably closer to 49. *Id.* The small population size is especially concerning because dolphin populations that fall to such a level often

suddenly decline to extinction. *Id.* For example, the now extinct Chinese Yangtze River dolphin experienced a precipitous decline when its population reached a similarly small number. *Id.*

As established by Plaintiffs in their injunction motion, the smaller the Māui dolphin population, the more vulnerable it is to extinction from mortality in fisheries bycatch. *See* Dkt. 49, pp. 3, 5, & 38. This fact is of even greater significance considering New Zealand's recent proposal to double commercial set net and trawl fishing for snapper in the dolphin's (undisputed) habitat on the west coast of the North Island. Third Sommermeyer Dec., ¶ 7 & Ex. 4; Third Slooten Dec., ¶ 8.

### Rule 59 Provides an Analogous Basis for Granting Plaintiffs' Motion

While the Rules for the Court of International Trade do not provide an express basis for supplementing the record before the Court on Plaintiffs' pending injunction motion, Rule 1 provides the Court with discretion to fashion a procedural remedy. As stated by that Rule: "When a procedural question arises that is not covered by these rules, the court may prescribe the procedure to be followed in any manner not inconsistent with these rules." U.S. CT. INT'L TRADE R. 1-1. The Court should exercise such discretion where, as here, permitting supplementation of the record now, with evidence directly relevant to the Court's decision, would promote judicial efficiency by potentially avoiding a later request for reconsideration of the injunction ruling (to the extent necessary). *Id*. Additionally, promoting such efficiency will also avoid a delay in the implementation of protections for the Māui dolphin—especially given the negative population trend and the NZG's plans for substantially increased fishing in its habitat.

In crafting a proper legal standard upon which to judge Plaintiffs' request for supplementation, the Court may find guidance, by analogy, in Rule 59 governing requests for a rehearing. *See* U.S. CT. INT'L TRADE R. 59-1(a)(1)(B). Although the language of the rule

expressly applies to a request for a "rehearing on all or some of the issues . . . after a nonjury trial," the rule "has been expansively read by this Court to encompass 'rehearing[s] of any matter[s] decided by the court without a jury.'" *Ad Hoc Utils. Group v. United States*, 33 CIT 1284, 1285 n.1 (2009). This Court has interpreted Rule 59 as allowing a rehearing under certain circumstances, including "the discovery of new evidence which even a diligent party could not have discovered in time." *Id.* at 1289–90. The purpose of rehearing or reconsideration is "to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result." *Id.* at 1290.

Applying this rule by analogy (given its post-decisional focus) strongly supports allowing Plaintiffs to supplement the existing record. While the NZG informed this Court that a new population survey was in progress, the projected release of a draft report was September 30, 2021. *See* Dkt. 72, at 2. Plaintiffs also understand that the NZG has kept the report strictly confidential and that information in the report only became publicly available after being recently leaked to the press.[3] *See* Third Sommermeyer Dec., ¶¶ 2–5. Thus, Plaintiffs could not have discovered the updated survey results prior to the July 1st oral argument.

With respect to the proposed increase in the snapper quota in Māui dolphin habitat, the NZG released the proposal document for public comment in late June 2021 on the Fisheries New Zealand website. *Id*., ¶ 7. However, the proposal apparently only received minimal New Zealand press coverage until later in July and August. *Id.* Given this timing in relation to the July 1st

---

[3] It remains unclear when the abundance results were produced by the NZG scientists involved in the project. In Professor Slooten's opinion, the results should have been available to NZG in about one or two months after the March 15 conclusion of the 2021 boat surveys. Third Slooten Dec., ¶ 9.

PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT EVIDENTIARY RECORD - 7 of 10

injunction hearing, it is unlikely that Plaintiffs, even in the exercise of reasonable diligence, could have discovered the NZG proposal in time for the hearing.

Further, as described above, the significance and the relevance of the survey results and proposed quota increase would certainly qualify them as "material matters of law or fact" that could potentially influence the Court's decision on Plaintiffs' injunction motion. At the very least, allowing the evidence into the record now will permit the court to review a more complete factual record concerning the present status of the Māui dolphin.[4] Overall, permitting supplementation now will not only promote judicial efficiency but will also be in the best interest of the Māui dolphin.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their request to supplement the evidentiary record upon which the Court will decide Plaintiffs' Renewed Motion for a Preliminary Injunction with (1) the results of the 2020-2021 Māui dolphin population survey; (2) the Third Declaration of Professor Elizabeth Slooten interpreting those survey results; and (3) a "Review of Sustainability Measures for Snapper (SNA 8) for 2021/22" published by Fisheries New Zealand.

---

[4] In responding to the leaked report, the NZG has emphasized that the report is not yet peer reviewed. Third Sommermeyer Dec., Ex. 2. However, the NZG spokesperson did not state or otherwise suggest that there was any reason to question the accuracy of the results or to anticipate that they might change. *Id.* Moreover, a change is highly unlikely because the survey "replicated the method used for the abundance estimates in 2015-2016 and 2010-2011." *Id*; Third Slooten Dec., ¶ 3. In any case, the NZG has shown no hesitation in the past in relying on non-peer reviewed materials – including the "MacKenzie (in prep)" study – when it believed that those materials benefited its position. *See e.g.,* Dkt. 49-1, Ex. 5, at P-067–068. The NZG further points to the wide confidence intervals as not supporting a population "trend." Third Sommermeyer Dec., Exs. 1 & 2. Yet, similar confidence intervals applied to the 2015-2016 survey results that the NZG found to be "encouraging" and that the Federal Defendants concluded supported a "stabilizing" or "increasing" population.

PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT EVIDENTIARY RECORD - 8 of 10

Plaintiffs also respectfully move the Court to exercise its discretion to order the NZG to provide the Court with a copy of the 2020-2021 Māui dolphin population survey report.

Respectfully submitted,

s/ Brett Sommermeyer
Brett Sommermeyer
Catherine Pruett
Sea Shepherd Legal
2226 Eastlake Avenue East #108 Seattle, WA 98102
(206) 504-1600
brett@seashepherdlegal.org
catherine@seashepherdlegal.org

Lia Comerford
Earthrise Law Center at Lewis & Clark Law School 10101 S. Terwilliger Blvd.
Portland, OR 97219
(503) 768-6823
comerfordl@lclark.edu

*Attorneys for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures Rule 2(B)(1)(a), I hereby certify that Plaintiffs' Motion for Leave To Supplement Evidentiary Record on Renewed Motion for a Preliminary Injunction complies with the limitation of 14,000 words. There are 2,880 words in this brief (including headings, footnotes, and quotations), as counted by Microsoft Word, the word processor used to prepare the brief.

s/ Brett Sommermeyer
Brett Sommermeyer
Sea Shepherd Legal
2226 Eastlake Avenue East #108 Seattle, WA 98102
(206) 504-1600
brett@seashepherdlegal.org