IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>WILBUR ROSS, et al.,<br><br>            Defendants,<br><br>    and<br><br>NEW ZEALAND GOVERNMENT<br><br>            Defendant-Intervenor. | Civil Action No. 1:20-cv-00112-GSK<br><br>Before: Judge Gary S. Katzmann<br><br>Plaintiffs' Reply to Motion for Leave To Supplement Evidentiary Record on Renewed Motion for a Preliminary Injunction |

PLAINTIFFS' [PROPOSED] REPLY

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ..........................................................................................................................1

I.     The Court can consider Plaintiffs' supplemental evidence for purposes of deciding Plaintiffs' Renewed Motion for a Preliminary Injunction ...................................1

II.    The New Zealand Governments' exhaustion argument is meritless .................................6

III.   Defendants' attack the weight the Court should give Plaintiffs' proposed evidence, not its relevance or materiality ........................................................................................8

CONCLUSION ...................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*AgustaWestland North America, Inc. v. United States*, 880 F.3d 1326 (Fed. Cir. 2018) ............... 3

*Aircraft Charter Solutions, Inc. v. United States*, 109 Fed.Cl. 398 (Fed. Cl. 2013) ....................... 8

*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374 (Fed. Cir. 2009) ............................... 2, 5

*Camp v. Pitts*, 411 U.S. 138 (1973) ................................................................................................ 2

*Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) .............................................. 2

*Ctr. for Biological Diversity v. U.S. Dep't of Housing & Urban Dev.*, No. CIV 05-261,
    2007 WL 9723130 (D. Ariz. Oct. 26, 2007) ............................................................................ 3

*Darby v. Cisneros*, 509 U.S. 137 (1993) ........................................................................................ 7

*Earth Island Inst. v. Evans*, 256 F. Supp.2d 1064 (N.D. Cal. 2003) ............................................. 4

*Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir. 2000) .......................................... 2

*Grace v. Burger*, 665 F.2d 1193 (D.C. Cir. 1981) ........................................................................ 7

*GTE Sylvania, Inc. v. Consumer Products Safety Comm'n*, 404 F. Supp. 352 (D. Del. 1975) ....... 4

*Nat'l Trust for Historic Pres. v. Block*, 938 F. Supp. 908 (D.D.C. 1996) ..................................... 4

*NRDC v. Ross*, 331 F. Supp. 3d 1339 (Ct. Int'l Trade 2018) ......................................................... 2

*Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290 (D. Or. 2011) ............. 4

*Pac. Fleet Submarine Mem. Ass'n v. U.S. Dep't of the Navy*,
    524 Fed. App'x. 315 (9th Cir. 2013) ........................................................................................ 7

*Park Cty. Res. Council, Inc. v. U.S. Dep't of Agriculture*, 817 F.2d 609 (10th Cir. 1987) ............. 7

*San Francisco BayKeeper v. Whitman*, 297 F.3d 877 (9th Cir. 2002) .......................................... 2

*Sierra Club v. U.S. Army Corps of Eng'rs*, 935 F. Supp. 1556 (S.D. Ala. 1996) .......................... 4

*Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, CV-10-863,
    2011 WL 905656 (D. Ariz. March 15, 2011) .......................................................................... 3

**Statutes** **Page(s)**

5 U.S.C. § 704 ............................................................................................................................... 6

5 U.S.C. § 706(1) .......................................................................................................................... 1

16 U.S.C. § 1371(a)(2) .................................................................................................................. 6

**Other** **Page(s)**

Fed. R. Evid. 401 .......................................................................................................................... 8

11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER,
  FEDERAL PRACTICE AND PROCEDURE, § 2949 (3d ed.) ........................................ 4

**INTRODUCTION**

Plaintiffs seek to supplement the evidentiary record in support of their Renewed Motion for a Preliminary Injunction with evidence related to (1) the Māui dolphin population size and trend, and (2) the New Zealand Government's (NZG) proposal to significantly increase commercial trawl and set net fishing in Māui dolphin habitat on the west coast of the North Island. This evidence is highly relevant to Plaintiffs' pending preliminary injunction motion, and Federal Defendants and the NZG (collectively, Defendants) cannot seriously contend otherwise. Instead, they argue the Court cannot consider the proposed evidence because it is not part of the administrative record, and that Plaintiffs have not exhausted their administrative remedies. Defendants also raise numerous arguments going to the weight the Court should give the proposed evidence. The Court should reject Defendants' arguments and grant Plaintiffs' motion in its entirety.

**ARGUMENT**

**I.     The Court can consider Plaintiffs' supplemental evidence for purposes of deciding Plaintiffs' Renewed Motion for a Preliminary Injunction.**

Defendants argue that the Court should deny Plaintiffs' motion to supplement because the proposed supplementary evidence is not, and cannot be, part of the administrative record. *See* Fed. Def. Br., Dkt. 83, at 5–6; NZG Br., Dkt. 84, at 8–9. Defendants are wrong for several reasons. First, Defendants ignore the fact that Plaintiffs' first claim for relief is a *failure to act* claim brought pursuant to APA section 706(1), which provides that reviewing courts shall "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1); Supplemental Complaint, Dkt. 46, at ¶¶ 104–08. Because Federal Defendants never acted, the Court's scope of review for

Plaintiffs' first claim is not limited to any administrative record.[1] *See Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) (stating that in APA section 706(1) cases, "review is not limited to the [administrative] record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record"); *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("As this case concerns agency inaction, there can be no final agency action that closes the administrative record or explains the agency's actions.").

Defendants' argument fails against this straightforward and inevitable conclusion. The cases Federal Defendants cite, Dkt. 83 at 5–6, are inapposite because those cases involve challenges to agency actions. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) (challenging the Comptroller of the Currency's denial of a national bank charter); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (challenging the Secretary of Transportation's authorization of funding for highway construction through a public park); *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1378 (Fed. Cir. 2009) (challenging the award of a contract by the Department of Defense).

Unlike Plaintiffs' first claim for relief, Plaintiffs' second and third claims challenge agency actions: Federal Defendants' denials of Plaintiffs' Petitions and decision to issue a comparability finding for two New Zealand fisheries. Supplemental Complaint, at pages 34–38. This material difference between Plaintiffs' claims is the apparent source of Defendants' confusion. But the fact that one of Plaintiffs' claims is not limited to the record, yet the two others are, does not transform Plaintiffs' failure to act claim into one limited to an administrative record.

---

[1] Plaintiffs' first claim here is the same claim that the plaintiffs brought in *NRDC v. Ross*, 331 F. Supp. 3d 1339 (Ct. Int'l Trade 2018). As in *NRDC*, here the Court can evaluate the evidence presented by the parties in support of or in opposition to the motion for a preliminary injunction without regard to whether that evidence would be included in any administrative record.

PLAINTIFFS' [PROPOSED] REPLY                                                                                   2

Even if the Court agrees with Defendants that Plaintiffs' failure to act claim is limited to the administrative record,[2] courts evaluating such claims liberally allow submission and consideration of extra-record materials. *See, e.g.*, *Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, CV-10-863, 2011 WL 905656, at **6–7 (D. Ariz. March 15, 2011) (explaining that the administrative record is not closed in failure to act cases and that "[t]he Ninth Circuit's treatment of record supplementation in failure-to-act cases strongly suggests that failure to act cases are themselves an independent exception to the record review rule"); *Ctr. for Biological Diversity v. U.S. Dep't of Housing & Urban Dev.*, No. CIV 05-261, 2007 WL 9723130, at *2 (D. Ariz. Oct. 26, 2007) (finding that scope of review for APA section 706(1) failure to act claims allows for courts, in their discretion, to consider material outside the administrative record).

Relatedly, the administrative record may be supplemented in cases where "'the omission of extra-record evidence precludes effective judicial review[,]'" with judicial review deemed "effective" if it is consistent with the APA. *AgustaWestland North America, Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (quoting *Murakami v. United States*, 46 Fed.Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir.)). Here, treating Plaintiffs' APA section 706(1) claim as a section 706(2) claim by strictly limiting the section 706(1) claim to the administrative record is inconsistent with the APA and would preclude effective judicial review, as the Court would be excluding highly relevant evidence.

Second, Defendants overlook the fact that Plaintiffs are seeking to supplement the

---

[2] Defendants inaccurately describe Plaintiffs' motion as attempting to supplement the administrative record. Dkt. 83 at 5; Dkt. 84 at 8. Plaintiffs are attempting to supplement the evidentiary record on Plaintiffs' motion for a preliminary injunction. *See, generally*, Dkt. 81. Plaintiffs are *not* attempting to supplement any administrative record. Thus, the cases cited by the NZG are inapposite because, in those cases, the courts were addressing whether the administrative record should be supplemented. *See* Dkt. 83 at 8–9 (citing *Axiom*, 564 F.3d at 1378–79 and *U.S. Dept. of Energy v. Brimmer*, 776 F.2d 1554, 1559, n.1 (Temp. Emer. Ct. App. 1985)).

evidentiary record on their *preliminary injunction motion*. At the preliminary injunction stage, the court's review is not limited to the administrative record. *See, e.g.*, *Nat'l Trust for Historic Pres. v. Block*, 938 F. Supp. 908, n. 10 (D.D.C. 1996) (denying request to strike extra record affidavits relevant to the "substantial issues regarding the appropriate relief"); *Sierra Club v. U.S. Army Corps of Eng'rs*, 935 F. Supp. 1556, 1568 (S.D. Ala. 1996) (allowing extra-record evidence that goes to question of irreparable injury rather than the correctness of the agency's decision); *GTE Sylvania, Inc. v. Consumer Products Safety Comm'n*, 404 F. Supp. 352, 368 n. 68 (D. Del. 1975) (in record review case, "affidavits submitted by the plaintiffs are essential to establish irreparable harm before a preliminary injunction can be issued").[3] This makes sense given the urgency of preliminary injunctions and that they only maintain the parties' positions until the merits of a case are decided. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 2949 (3d ed.) (discussing why evidentiary rules are more lenient for preliminary injunction motions). Further, "inasmuch as the grant of a preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so in order to serve the primary purpose of preventing irreparable harm before a trial can be had." *Id.* This rationale applies with equal force to a court's consideration of extra-record evidence at the preliminary injunction stage.

Because Plaintiffs seek to supplement the evidentiary record on their preliminary injunction motion, and because Plaintiffs' first claim is a failure to act claim, Defendants' reliance

---

[3] *See also, e.g.*, *Earth Island Inst. v. Evans*, 256 F. Supp.2d 1064, 1078 n.16 (N.D. Cal. 2003) (finding that extra-record materials may be submitted and considered in connection with a request for preliminary injunctive relief and stating "documents submitted for this purpose do not even fall within the ambit of rules governing review of agency decisions under the APA"); *Nw. Envtl. Def. Ctr. v. U.S. Army Corps of Eng'rs*, 817 F. Supp. 2d 1290, 1300 (D. Or. 2011) ("Courts may also consider extra-record evidence in determining whether a party will suffer irreparable harm in the absence of injunctive relief.").

PLAINTIFFS' [PROPOSED] REPLY                                                                                     4

on *Axiom Resource Management. v. United States* is misplaced. *See* Dkt. 83 at 5–6; Dkt. 84 at 8–9. *Axiom* involved a challenge to the Department of Defense's award of a contract, and the Federal Circuit was evaluating the district court's decision, when ruling on *the merits* of the plaintiff's claim, to allow supplementation of the administrative record. 564 F.3d at 1376, 1378. The *Axiom* Court's decision must be read in, and limited to, that context. In contrast, Plaintiffs' first claim does not challenge any final agency action, and Plaintiffs are seeking to supplement the evidentiary record on their preliminary injunction motion, *not* the administrative record.

Third, Federal Defendants claim that "allowing parties to continually supplement the record would insert the Court into the day-to-day execution of the MMPA's implementation, supplanting the expert agency that Congress entrusted to administer the Act." Dkt. 83 at 6. Similarly, Defendants point to the comparability finding process as grounds to not bypass the agency's future analysis, as well as to Federal Defendant's emergency rulemaking powers. Dkt. 83 at 6–7; Dkt. 84 at 2. But these arguments make little sense in the context of Plaintiffs' motion to supplement the preliminary injunction evidentiary record. Plaintiffs' claims challenge actions that Federal Defendants have already taken, as well as Federal Defendants' failure to implement the required import ban. The fact that Federal Defendants might take an additional action in the future, and that as part of their future decision-making they might consider some of the evidence Plaintiffs seek to add to the record now, is irrelevant.

Lastly, this Court has indicated it considers post-decisional evidence relevant to its consideration of Plaintiffs' preliminary injunction motion. In its pre-oral argument questions, the Court asked the Parties (1) to provide "any recent updates regarding the Māui dolphin population or bycatch" and (2) whether "there [had] been any changes or further developments following the October 2020 implementation of the [NZG's] . . . new gill net and trawl restrictions[.]" Dkt. 70 at

PLAINTIFFS' [PROPOSED] REPLY                                                                                                          5

2, 4. The new population estimate is responsive to the first question.[4] The new, increased fishing quota—even if currently suspended pending a judicial challenge seeking a higher quota, *see* Dkt. 84 at 6 & Ex. 3[5]—is relevant both to the second question because the increased fishing effort will be immediately outside the restricted zones, and to Plaintiffs' contention that the current zones are not sufficiently protective because dolphins are found out to at least the 100-meter depth contour.

## II.   The New Zealand Governments' exhaustion argument is meritless.

Neither the MMPA nor the APA impose an administrative exhaustion requirement on citizens bringing claims that the U.S. government failed to comply with its duty to ban the import of commercial fish and fish products caught using fishing methods that result in the incidental death or serious injury of marine mammals in excess of U.S. standards. *See* 5 U.S.C. § 704; 16 U.S.C. § 1371(a)(2). Similarly, there is no exhaustion requirement related to citizens challenging the U.S. government's denial of APA rulemaking petitions. 5 U.S.C. § 704. Nonetheless, the NZG persists in raising its meritless argument. Dkt. 84 at 2, 6.

For the same reasons raised in their response to Defendants' motions to dismiss, the Court should reject this argument. *See* Dkt. 64 at 11–14. The NZG refers to the "obligation" of Plaintiffs to first exhaust all administrative remedies prior to moving to supplement (Dkt. 84 at 2, 6) yet fails to cite any authority supporting such an "obligation" for one simple reason: no such authority exists. An exhaustion requirement is only triggered under the APA when there is an "explicit" administrative remedy found in the statute or regulation that a plaintiff failed to pursue. 5 U.S.C.

---

[4] Importantly, Plaintiffs are not asking the Court to consider population data in the first instance. Such evidence is already before the Court, including the scientific standards (*e.g.*, PBR calculations) under which the evidence is to be considered. Plaintiffs only ask the Court to consider the new, lower number as applied in accord with these standards.
[5] After Plaintiffs filed their motion to supplement, the NZG finalized its decision to increase the fishing quota. *See* Dkt. 84 at 5.

PLAINTIFFS' [PROPOSED] REPLY                                                                                           6

§ 704; *Darby v. Cisneros*, 509 U.S. 137, 147 (1993).[6] Because neither the APA nor the MMPA explicitly require Plaintiffs to submit the updated survey results or new fishing quotas to Federal Defendants for their consideration, there was not an administrative process to exhaust prior to Plaintiffs filing their present motion.

This situation is not altered by the fact that the MMPA Imports Rule provides for an ongoing process through which Federal Defendants may, over the course of the next several years, continue to evaluate evidence relevant to comparability determinations. Dkt. 83 at 6–7. Similarly, the opportunity afforded by this process for non-governmental organizations to submit information relevant to comparability findings, Dkt. 83 at 7, does not impose an administrative process upon those organizations that must be exhausted before they can challenge the Federal Defendants' failure to act upon that information. The MMPA Imports Rule cannot, and did not, modify the MMPA itself by creating an exhaustion requirement where none exists. *See NRDC*, 331 F. Supp. 3d at 1354 (noting that "agency regulations cannot negate mandatory language in a statute").

Moreover, imposing an alleged exhaustion requirement created by this ongoing regulatory process would be inconsistent with this Court's request that prior to oral argument, the parties provide for post-decisional evidence. Dkt. 70 at 2, 4. The Court would not have engaged in this inquiry as part of oral argument if it believed it could not consider such evidence due to an

---

[6] Multiple federal circuits have found that absent a requirement of plaintiffs to exhaust administrative remedies, a failure to exhaust defense will not succeed. *See, e.g., Pac. Fleet Submarine Mem. Ass'n v. U.S. Dep't of the Navy*, 524 Fed. App'x. 315, 319 (9th Cir. 2013) ("Because the Plaintiff had no administrative remedy under the [applicable statute] to exhaust, its APA claims are not barred for failure to exhaust."); *see also Park Cty. Res. Council, Inc. v. U.S. Dep't of Agriculture*, 817 F.2d 609, 619 (10th Cir. 1987) ("Exhaustion doctrine presupposes an adequate administrative remedy."), *overruled on other grounds by* 956 F.2d 970 (10th Cir. 1992); *Grace v. Burger*, 665 F.2d 1193, 1196 (D.C. Cir. 1981) ("[D]ismissal of the complaint for failure to exhaust administrative remedies was without justification. No administrative remedies existed for appellants to exhaust."), *vacated in part on other grounds by* 461 U.S. 171 (1983).

exhaustion requirement. Furthermore, requiring Plaintiffs to request a renewed comparability finding (as part of an allegedly required administrative process) would result in the extended delay of additional protections for the Māui dolphin—significantly, when the very evidence Defendants seek to exclude demonstrates the need for immediate action to avert the dolphins' extinction.

**III.     Defendants' attack the weight the Court should give Plaintiffs' proposed evidence, not its relevance or materiality.**

Many of the arguments raised by the NZG go to the weight the Court should give Plaintiffs' proposed evidence. *See* Dkt. 84 at 2–8[7]; *see also* Dkt. 83 at 7 (Federal Defendants' argument that the proposed evidence "would not alter the regulatory regime" imposed by the NZG). These arguments fail, on their merits, for a number of reasons. However, for purposes of Plaintiffs' motion to supplement, the Court can disregard these arguments because they do not address the immediate question before the Court, which is whether the Court should exercise its discretion to consider the evidence in the first instance. The Court can, and should, do so, because the evidence is relevant and material to the Court's decision on the preliminary injunction motion. *See* Fed. R. Evid. 401 (providing test for relevant evidence); Dkt. 81 at 6–8 (discussing Court's discretion to allow supplementation of the record and noting that CIT Rule 59 provides an analogous basis for granting Plaintiffs' motion to allow material facts into the record); *see also Aircraft Charter Solutions, Inc. v. United States*, 109 Fed.Cl. 398, 415–16, 419–20 (Fed. Cl. 2013) (concluding that when the proffered supplemental evidence bears directly on the injunctive relief factors, such evidence is helpful and necessary for effective judicial review and should be admitted for the court

---

[7] This includes, for example, the NZG's arguments regarding the Third Declaration of Professor Elisabeth Slooten. Dkt. 84 at 7–8. Contrary to the NZG's argument, Professor Slooten's Declaration does not consist of "unsupported opinion and speculation" but rather is based on her personal familiarity with the new population survey, her independent expertise and analysis, and released survey results reported in the news media and confirmed by the NZG. Dkt. 81-2, ¶ 4.

to weigh when evaluating the preliminary injunction factors).

There is little doubt the proposed evidence is relevant and material. As discussed above, the Court has already indicated it considers such evidence relevant to the pending preliminary injunction motion. Dkt. 70 at 2, 4. Moreover, the urgent need for a preliminary injunction, and the likely irreparable harm to Plaintiffs' members demonstrating the need for the injunction, are largely based on the critically low number of Māui dolphins remaining in the world. The new population survey results, as well as the NZG's proposal to significantly increase commercial trawl and set net fishing in Māui dolphin habitat, are plainly relevant to that motion.

Further, Defendants raised arguments in opposition to Plaintiffs' preliminary injunction motion that relied on evidence similar to that which they now seek to exclude. For example, Federal Defendants relied upon the prior population estimate to defend their decisions to deny Plaintiffs' Petitions and issue the comparability finding and to argue against Plaintiffs' preliminary injunction motion. *See, e.g.*, Dkt. 57, at 16–18, 32–33 (noting relevance of population estimate to PBR calculation). Similarly, the NZG's claim that population evidence is irrelevant is belied by its argument in opposition to a preliminary injunction that Plaintiffs have not suffered irreparable harm because estimated dolphin mortality and serious injury are below PBR. *See* Dkt. 55 at 52; *see also* Dkt. 81 at 3–6 (discussing relevance of Plaintiffs' proposed evidence). The Court should reject Defendants' attempts to selectively rely on evidence when it seemingly supports their positions but reject (and exclude) the same or similar evidence when it does not.

Lastly, the NZG's argument that the Court should deny Plaintiffs' motion because the new population survey "pertains solely to the dolphin population within the surveyed area and not to the population within the entire habitat" is particularly meritless. Dkt. 84 at 1; *see also id.* at 2 (emphasizing that the survey provides "estimates, not actual head counts"). The method used for

PLAINTIFFS' [PROPOSED] REPLY                                                                                                  9

the new population survey is the same as that used for the previous abundance estimates, including the one conducted in 2015–2016, Dkt. 81-1, Ex. 3, and the NZG states that the geographical areas surveyed are the same. Dkt. 84 at 3 n.2. Defendants found such prior surveys to be relevant and reliable representations of the Māui dolphin's overall population estimate and trend. *See* Second Declaration of Brett Sommermeyer, Ex. 5, at P-053–54 (NZG Application for a Comparability Finding, relying on previous survey results, including the one from 2015-2016, when providing information to Federal Defendants on Māui dolphin population abundance and trends and describing the data as "reliable"); Dkt. 84 at 3 (NZG noting its reliance on and approval of earlier, similar population surveys). Further, as the NZG's Department of Conservation explained in a press release, the purpose of the population survey is to "get an indication of population trend for this [] species," and "the current survey focuses on estimating the number of dolphins in the population of this critically endangered sub-species[.]" Dkt. 81-1, Ex. 3. The NZG's argument misstates the actual use and purpose of the population surveys.

Thus, the Court should grant Plaintiffs' motion to allow the evidence into the preliminary injunction evidentiary record, and then the Court can determine what weight, if any, to afford the evidence when making its decision on Plaintiffs' preliminary injunction motion.

## CONCLUSION

For the reasons provided above and in Plaintiffs' motion, *see* Dkt. 81, this Court should grant Plaintiffs' motion to supplement the evidentiary record upon which the Court will decide Plaintiffs' Renewed Motion for a Preliminary Injunction with (1) the results of the 2020-2021 Māui dolphin population survey; (2) the Third Declaration of Professor Elizabeth Slooten; and (3) a "Review of Sustainability Measures for Snapper (SNA 8) for 2021/22" published by Fisheries New Zealand. Further, given the NZG's statement that it expected the population survey to be

issued within a few days following the filing of its opposition, *see* Dkt. 84 at 1, Plaintiffs respectfully request that the Court order the NZG to provide the Court with a copy of the survey report.

Respectfully submitted this 18th day of October, 2021.

        Respectfully submitted,

        s/ Lia Comerford
        Lia Comerford
        Earthrise Law Center at Lewis & Clark Law
        School 10101 S. Terwilliger Blvd.
        Portland, OR 97219
        (503) 768-6823
        comerfordl@lclark.edu

        Brett Sommermeyer
        Catherine Pruett
        Sea Shepherd Legal
        2226 Eastlake Avenue East #108 Seattle, WA 98102
        (206) 504-1600
        brett@seashepherdlegal.org
        catherine@seashepherdlegal.org

        *Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedures Rule 2(B)(1)(a), I hereby certify that Plaintiffs' [Proposed] Reply to Motion for Leave To Supplement Evidentiary Record on Renewed Motion for a Preliminary Injunction complies with the limitation of 7,000 words. There are 3,483 words in this brief (including headings, footnotes, and quotations), as counted by Microsoft Word, the word processor used to prepare the brief.

s/ Lia Comerford<br>
Lia Comerford<br>
Earthrise Law Center at Lewis & Clark Law School 10101 S. Terwilliger Blvd.<br>
Portland, OR 97219<br>
(503) 768-6823<br>
comerfordl@lclark.edu