*J. Executive Orders 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations and Low-Income Populations and Executive Order 14008: Tackling the Climate Crisis at Home and Abroad*

EPA believes that this action is not subject to Executive Order 12898 (59 FR 7629, February 16, 1994) and Executive Order 14008 (86 FR 7619, January 27, 2021) because this rule does not establish an environmental health or safety standard.

*K. Congressional Review Act (CRA)*

This action is subject to the CRA, 5 U.S.C. 801 *et seq.,* and EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

**List of Subjects in 40 CFR Part 372**

Community right-to-know, Environmental protection, Reporting and recordkeeping.

Dated: October 17, 2022
**Michal Freedhoff,**
*Assistant Administrator, Office of Chemical Safety and Pollution Prevention.*

Therefore, for the reasons stated in the preamble, EPA is amending 40 CFR part 372 as follows:

## PART 372 TOXIC CHEMICAL RELEASE REPORTING COMMUNITY RIGHT-TO-KNOW

■ 1. The authority citation for part 372 continues to read as follows:

**Authority:** 42 U.S.C. 11023 and 11048.

■ 2. In § 372.3, add in alphabetical order a definition for ''Parent company'' to read as follows:

### § 372.3  Definitions.

\* \* \* \* \*

*Parent company* means the highest-level company (or companies) of the facility's ownership hierarchy as of December 31 of the year for which data are being reported according to the following instructions. The *U.S. parent company* is located within the United States while the *foreign parent company* is located outside the United States:

(1) If the facility is entirely owned by a single U.S. company that is not owned by another company, that single company is the U.S. parent company.

(2) If the facility is entirely owned by a single U.S. company that is, itself, owned by another U.S.-based company (*e.g.,* it is a division or subsidiary of a higher-level company), the highest-level company in the ownership hierarchy is the U.S. parent company. If there is a higher-level parent company that is outside of the United States, the highest-level foreign company in the ownership hierarchy is the foreign parent company.

(3) If the facility is owned by more than one company (*e.g.,* company A owns 40 percent, company B owns 35 percent, and company C owns 25 percent), the highest-level U.S. company with the largest ownership interest in the facility is the U.S. parent company. If there is a higher-level foreign company in the ownership hierarchy, that company is the foreign parent company.

(4) If the facility is owned by a 50:50 joint venture or a cooperative, the joint venture or cooperative is its own parent company.

(5) If the facility is entirely owned by a foreign company (*i.e.,* without a U.S.-based subsidiary within the facility's ownership hierarchy), the highest-level foreign parent company is the facility's foreign parent company.

(6) If the facility is federally owned, the highest-level Federal agency or department operating the facility is the U.S. parent company.

(7) If the facility is owned by a non-Federal public entity (*e.g.,* a State, municipal, or tribal government), that entity is the U.S. parent company.

\* \* \* \* \*

■ 3. In § 372.85 revise paragraph (b)(8) to read as follows:

### § 372.85  Toxic chemical release reporting form and instructions.

\* \* \* \* \*

(b) \* \* \*

(8) Name of the facility's parent company, including:

(i) Legal name of the facility's highest-level U.S.-based parent company and its Dun and Bradstreet identification number, when applicable.

(ii) Beginning with the reporting year ending December 31, 2023, for which reporting forms are due July 1, 2024, and for each subsequent reporting year, the legal name of the facility's highest-level foreign parent company and its Dun and Bradstreet identification number, when applicable.

(iii) The facility must report using the standardized conventions for the naming of a parent company as provided in the toxic chemical release inventory reporting instructions identified in paragraph (a) of this section.

\* \* \* \* \*

■ 4. In § 372.95 revise paragraph (b)(12) to read as follows:

### § 372.95  Alternate threshold certification and instructions.

\* \* \* \* \*

(b) \* \* \*

(12) Name of the facility's parent company, including:

(i) Legal name of the facility's highest-level U.S.-based parent company and its Dun and Bradstreet identification number, when applicable.

(ii) Beginning with the reporting year ending December 31, 2023, for which reporting forms are due July 1, 2024, and for each subsequent reporting year, the legal name of the facility's highest-level foreign parent company and its Dun and Bradstreet identification number, when applicable.

(iii) The facility must report using the standardized conventions for the naming of a parent company as provided in the toxic chemical release inventory reporting instructions identified in paragraph (a) of this section.

\* \* \* \* \*

[FR Doc. 2022–22833 Filed 10–20–22; 8:45 am]
**BILLING CODE 6560–50–P**

## DEPARTMENT OF COMMERCE

**National Oceanic and Atmospheric Administration**

**50 CFR Part 216**

[Docket No. 221017–0216]

**RIN 0648–BK06**

**Modification of Deadlines Under the Fish and Fish Product Import Provisions of the Marine Mammal Protection Act**

**AGENCY:** National Marine Fisheries Service (NMFS), National Oceanic and Atmospheric Administration (NOAA), Commerce.

**ACTION:** Final rule.

**SUMMARY:** NMFS issues this final rule to revise the regulations implementing the import provisions of the Marine Mammal Protection Act (MMPA). This final rule extends, by one year, the exemption period to end December 31, 2023.

**DATES:** This final rule is effective October 21, 2022.

**FOR FURTHER INFORMATION CONTACT:** Kellie Foster-Taylor, Office of International Affairs, Trade, and Commerce NMFS by email at *kellie.foster-taylor@noaa.gov* or by phone at 301–427–7721.

**SUPPLEMENTARY INFORMATION:**

**Background**

On August 15, 2016, NMFS published a final rule (81 FR 54389) implementing the MMPA Import Provisions (16 U.S.C. 1371 (a)(2)). These provisions prohibit the import of fish or fish products from commercial fishing operations that result in the incidental mortality or serious injury of marine mammals in excess of United States standards. Specifically, this rule established conditions for evaluating a harvesting nation's regulatory programs to address incidental and intentional mortality and serious injury of marine mammals (hereafter referred to as bycatch) in its fisheries producing fish and fish products exported to the United States.

Fish and fish products from export and exempt fisheries identified by the Assistant Administrator for Fisheries in the List of Foreign Fisheries (LOFF) can only be imported into the United States if the harvesting nation has applied for and received a Comparability Finding from NMFS. The 2016 final rule established procedures that a harvesting nation must follow, and conditions it must meet, to receive a Comparability Finding for a fishery. The rule also established provisions for intermediary nations to ensure that such nations do not import and re-export to the United States fish or fish products that are subject to an import prohibition applicable to the harvesting nation.

**Exemption Period**

Under the MMPA Import Provisions, NMFS established an initial five-year exemption period for foreign nations to develop, as appropriate, fishery regulatory programs governing the bycatch of marine mammals that are comparable in effectiveness to U.S. regulations. During the exemption period, the prohibitions of the MMPA Import Provisions do not apply to imports from the harvesting nation. NMFS established the exemption period to provide nations with adequate time to assess marine mammal stocks, estimate bycatch, and develop regulatory programs to mitigate that bycatch.

NMFS issued an interim final rule on November 3, 2020 (85 FR 69515), to extend the exemption period and to allow more time for nations to implement regulatory programs and apply for comparability findings for their fisheries. Additional information on the basis for the extension was provided in the interim final rule and is not repeated here. The interim final rule established a 30-day comment period and NMFS considered those comments in making determinations about this subsequent final rule.

**Responses to Comments**

NMFS received submissions from three commenters on the interim final rule. Commenters included one non-governmental organization, one industry group, and one private citizen. One commenter raised an issue that was not germane to this action, because it addressed prior decision-making on the timeline of the previously-issued final rule implementing the MMPA Import Provisions (81 FR 54389; August 15, 2016). The other comments either supported or opposed the deadline extensions under the interim final rule. Comments received on the interim final rule are available for public review at *https://www.regulations.gov/* under the docket identifier ''NOAA–NMFS–2020–0127''. In the following sections, NMFS summarizes and responds to issues raised by commenters which are relevant to the 2020 decision to extend the exemption period.

*Modification of Deadlines*

*Comment 1:* One commenter supported the modification of deadlines under the MMPA Import Provisions. These modifications include: (1) extending the five-year exemption period by one year through December 31, 2022; and (2) changing the initial comparability finding application deadline from March 1 to November 30, 2021. Another commenter opposed both extensions, and urged the agency to maintain the original comparability finding application deadline of March 1, 2021, and the original exemption period end date of December 31, 2021, as established in the final rule implementing the MMPA Import Provisions (81 FR 54389; August 15, 2016).

*Response:* NMFS finds that extending the exemption period and the comparability finding application deadline is warranted and necessary due to delays in administrative actions attributable to diversion of governmental resources in response to the unprecedented COVID–19 pandemic. The pandemic has caused significant strains on foreign nations' operations and disruptions in research, legislative and regulatory processes. Providing nations with additional time to implement regulatory programs will allow more nations to meet the requirements of the MMPA Import Provisions and thereby enhance marine mammal conservation.

*Effects of the COVID–19 Pandemic on Seafood Trade and Marine Mammals*

*Comment 1:* One commenter noted that the COVID–19 pandemic has disrupted the global seafood supply chain. They expressed concerns that, without the modification of the deadlines, imposition of trade restrictions could cause further disruptions in the seafood supply chain. They noted such an impact could also affect U.S. seafood exporters.

*Response:* NMFS concurs that the pandemic affected the global seafood supply chain and continues to affect supply chains with labor shortages and transit delays. As such, NMFS believes extending the deadlines can reduce further disruptions to trade and additional burdens on the supply chain.

*Comment 2:* One commenter expressed a concern that the original five-year exemption period in the 2016 final rule implementing the MMPA Import Provisions was a poor decision. The commenter also disagreed with the extension of the exemption period and the revised deadline for comparability finding applications as specified in the interim final rule. In allowing for the original exemption periods, they asserted NMFS' action led to the loss of millions of marine mammals, and that the decision to extend the exemption period and the deadline for comparability finding applications will lead to the killing of, or cause serious injury to, over half a million marine mammals.

*Response:* NMFS has no supporting information to conclude that extending the exemption period and the deadline for comparability finding applications will result in mortality or serious injury of over half a million marine mammals. On the contrary, NMFS believes that allowing more time for nations to develop regulatory programs governing the bycatch of marine mammals that are comparable in effectiveness to U.S. regulations is likely to achieve more robust conservation efforts for marine mammals. If nations are subject to the original deadlines, and cannot achieve comparable regulatory programs in time, trade restrictions could reduce the incentive for additional actions to conserve marine mammals. Further, it is not likely that loss of access to the U.S. market would, by itself, result in a shutdown of foreign fisheries that interact with marine mammals.

*Comment 3:* One commenter wrote that a procedure included in the final rule implementing the MMPA Import Provisions (81 FR 54389, 54393)—that NMFS will consult with nations unlikely to receive a comparability finding—is the sufficient mechanism to remedy any trouble to meet deadlines due to the pandemic instead of an extension.

*Response:* While NMFS will consult with countries unlikely to receive a comparability finding, having consultations without an extension continues to exert burdens on many nations due to delays cascading from the pandemic and subsequent labor shortages (including within foreign fishery ministries) and supply chain issues. As a result, nations need more time to establish comparable regulatory programs. The extension will increase the likelihood that nations will be able to implement comparable regulatory programs after consultations with NMFS.

*Administrative Procedure Act (APA)*

*Comment 1:* One commenter wrote that NMFS' decision to issue the interim final rule was arbitrary and capricious under the APA. They asserted that NMFS violated the APA by waiving the usual 30-day opportunity for public comment, and that NMFS' application of the good cause exception under the APA is inappropriate.

*Response:* NMFS found good cause to issue the interim final rule to extend the exemption period and revise the deadline for applications without advance notice or the prior opportunity for public comment, as well as good cause to make the rule effective immediately without providing a 30-day delay. The basis for these findings was the need to expeditiously notify exporting nations of the extended time for submitting their comparability finding applications. Advance notice and prior opportunity for comment, or delayed effectiveness, would not have served the purposes of the extension and would have been contrary to the public interest in allowing exporting nations sufficient planning time to submit complete comparability finding applications so as to implement fully effective programs to mitigate marine mammal bycatch.

**Further Extension of the Exemption Period**

NMFS continued its outreach and technical consultations with seafood exporting nations during the extended exemption period to assist them in submitting applications for comparability findings by the extended deadline of November 30, 2021. Many nations submitted applications by the deadline and a few others were able to complete applications after follow-up consultations with NMFS. Ultimately, NMFS received applications for comparability findings from 132 nations and for 2,504 foreign fisheries.

NMFS staff reviewing applications have encountered a significant need to further consult with nations while evaluating the 2,504 foreign fisheries regarding the marine mammal bycatch mitigation programs described in their submissions. To complete review and evaluate comparability, staff have raised questions regarding species of marine mammals interacting with fishing gear, abundance estimates for those species, fishery monitoring programs to measure bycatch, and measures of effectiveness for the applied bycatch mitigation techniques. In addressing these questions, NMFS staff have experienced time delays in communicating with foreign counterparts and for translation of submitted responses.

Therefore, NMFS is extending the exemption period by one additional year. This change is warranted because of the need for clarity on all foreign fishery regulatory programs and for more time so that all applications from the 132 nations and the 2,504 foreign fisheries can be reviewed fairly and consistently.

**Classification**

This rule is published under the authority of the Marine Mammal Protection Act, 16 U.S.C. 1371. The NMFS Assistant Administrator has determined that this final rule is consistent with the Marine Mammal Protection Act and other applicable laws. Under NOAA Administrative Order (NAO 216–6), the promulgation of regulations that are procedural and administrative in nature are categorically excluded from the requirement to prepare an Environmental Assessment.

*Administrative Procedure Act*

NOAA issues this final rule to extend the exemption period without a 30-day delay in effective date. A delay in effective date is not required under section 553(d)(1) of the Administrative Procedure Act because this final rule grants an exemption by extending the exemption period through December 31, 2023. This extension will give NMFS more time to ensure consistency in its evaluations of foreign nation regulatory programs and give exporting nations more time to adjust supply chains in response to any trade restrictions that might be applied. Furthermore, NOAA finds good cause to issue this final rule without a delay in effective date under section 553(d)(3) of the Administrative Procedure Act because such delay would not serve the purposes of the extension and would be contrary to the public interest in avoiding confusion about near term deadlines faced by exporting nations.

*Executive Order 12866*

This final rule has been determined to be not significant for purposes of Executive Order 12866.

*Paperwork Reduction Act*

This final rule contains no new or revised collection-of-information requirements subject to the Paperwork Reduction Act.

**List of Subjects in 50 CFR Part 216**

Administrative practice and procedure, Exports, Marine mammals, Reporting and recordkeeping requirements.

Dated: October 18, 2022.

**Samuel D. Rauch, III,**

*Deputy Assistant Administrator for Regulatory Programs, National Marine Fisheries Service.*

For the reasons set out in the preamble, the interim rule amending 50 CFR part 216, which was published at 85 FR 69515 on November 3, 2020, is adopted as final with the following change:

**PART 216—REGULATIONS GOVERNING THE TAKING AND IMPORTING OF MARINE MAMMALS**

■ 1. The authority citation for part 216 continues to read as follows:

   **Authority:** 16 U.S.C. 1361 *et seq.*

■ 2. In § 216.3, the definition for ''Exemption period'' is revised to read as follows:

**§ 216.3   Definitions.**

\* \* \* \* \*

*Exemption period* means the period during which commercial fishing operations that are the source of exports of commercial fish and fish products to the United States will be exempt from the prohibitions of § 216.24(h)(1). The exemption period extends through December 31, 2023.

\* \* \* \* \*

[FR Doc. 2022–22965 Filed 10–20–22; 8:45 am]

**BILLING CODE 3510–22–P**