**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND, et al., | |
| Plaintiffs, | Civil Action No. 1:20-cv-00112-GSK |
| v. | Before: Judge Gary S. Katzmann |
| UNITED STATES, et al., | **Plaintiffs' Response in Opposition to the Motion of the Government of New Zealand for a Temporary Stay of the Effective Date of the Court's Preliminary Injunction** |
| Defendants. | |
| and | |
| NEW ZEALAND GOVERNMENT, | |
| Defendant-Intervenor. | |

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      New Zealand does not satisfy any of the preliminary injunction or stay factors ...............2

      A.      New Zealand is unlikely to prevail on the merits of its claim ...............................2

      B.      New Zealand is not likely to suffer irreparable harm in the absence of a stay .......3

      C.      The equities favor denying New Zealand's motion ...............................................8

      D.      The public interest will be served by denying the stay of the injunction ..............11

II.     Other arguments raised by New Zealand in support of its motion similarly fail ..............12

CONCLUSION ....................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Amoco Production Co. v. Village of Gambell*, 480 U.S. 531 (1987)..........................................9

*Brodie v. U.S. Dep't of Health & Human Servs.,* 715 F. Supp. 2d 74 (D.D.C. 2010) ....................7

*Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) ......................................4, 7

*Committee Overseeing Action for Lumber International Trade Investigations*
    *or Negotiations v. United States*, 393 F. Supp.3d 1271 (Ct. Int'l Trade 2019) ..................4

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ........................................................................4

*Nken v. Holder*, 556 U.S. 418 (2009) ..........................................................................................2

*Otter Products, LLC v. United States*, 37 F. Supp. 3d 1306 (Ct. Int'l Trade 2014).......................6

*Techsnabexport, Ltd. v. U.S.*, 795 F. Supp. 428 (Ct. Int'l Trade 1992).........................................7

*Toxco Inc. v. Chu*, 724 F. Supp. 2d 16 (D.D.C. 2010)..................................................................7

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7 (2008) ...................................................................2

**Other**            **Page(s)**

16 U.S.C § 1387(g)(1)................................................................................................................11

81 Fed. Reg. 54390 (col. 2 & 3) (Aug. 15, 2016).......................................................................11

11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1
    (3d ed. Apr. 2022 update) ................................................................................................4

Black's Law Dictionary (11th ed. 2019)........................................................................ 2, 13, 14

**INTRODUCTION**

After significant consideration, this Court recently issued its well-reasoned decision on Sea Shepherd's motion for a preliminary injunction, granting the motion and ordering the *immediate* ban on the import into the United States of fish and fishery products from nine fish species caught in New Zealand's West Coast North Island inshore trawl and set net fisheries. *See generally*, Opinion, ECF No. 108 (hereafter "PI Order") *and* Further Order on Plaintiffs' Motion for Preliminary Injunction, ECF No. 109. In compliance with this Order, the United States has implemented the ban. Thus, the critically endangered Māui dolphin, of which only an estimated 48 to 64 individuals age one year or older remain in the world, are already reaping the benefits of the Court's Order. And New Zealand, years after recognizing the significant repercussions of its failure to have a fishery traceability system in place, is finally, purportedly, beginning to take steps to put such a system in place.

New Zealand now asks the Court to stay the implementation of the ban until January 31, 2023, to allow it to develop a traceability system. *See generally*, Motion of the Government of New Zealand for a Temporary Stay, ECF No. 115 ("NZ Mot."). Absent this short stay, New Zealand claims its seafood industry will suffer significant financial hardship and that the reputation of its seafood industry will suffer. But these harms are short-lived, overstated, and speculative. More importantly, they pale in comparison to the ongoing risk posed to the Māui dolphin from set net and trawl fisheries that operate within the dolphins' range. Despite New Zealand's claim that the stay poses "virtually zero" risk to the Māui dolphin, bycatch can happen at any time, and just one incident pushes the species even closer to the brink of extinction. Thus, for these reasons and those discussed below, this Court should not revisit its decision to order an immediate import ban. It should deny New Zealand's motion.

# ARGUMENT

I. **New Zealand does not satisfy any of the preliminary injunction or stay factors.**

New Zealand asks this Court to assess its motion under the standard applicable to motions for stays pending appeal and motions for preliminary injunctions. NZ Mot. at 3–4, 10–11. Under this standard, the Court evaluates four factors: "(1) whether the moving party is likely to prevail on the merits of the claims; (2) whether the moving party is likely to suffer irreparable harm in the absence of a preliminary injunction; (3) the balance of equities; and (4) whether a preliminary injunction is in the public interest." PI Order at 31.

New Zealand bears the burden of providing a stay is warranted. *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."). It has failed to meet this burden. As discussed below, the four factors all weigh against the requested stay. New Zealand also raises several other non-persuasive arguments that do not fall within any of these factors. NZ Mot. at 4–10. Thus, the Court should exercise its discretion to deny New Zealand's motion.

    A.    **New Zealand is unlikely to prevail on the merits of its claim.**

New Zealand is unlikely to prevail on the "merits" of its "claim." Under this factor, courts consider whether parties are likely to prevail on the *substantive* claims in the case. *See* Black's Law Dictionary (11th ed. 2019) (defining "on the merits" as "([o]f a judgment) delivered after the court has heard and evaluated the evidence and the parties' substantive arguments"); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (evaluating whether plaintiffs are likely to succeed on the merits of their claim); *Nken*, 556 U.S. at 434 (in discussing standard for motions for stays, describing standard as "whether the stay applicant has made a strong showing that he is likely to succeed on the merits").

This factor undoubtedly weighs in Sea Shepherd's favor, as the Court has found that Sea Shepherd is likely to succeed on the merits of Claims Two and Three. PI Order at 32. Nonetheless, New Zealand attempts to shoehorn a non-existent claim into this factor, arguing that "the merits involved here are not the substantive merits of the issues discussed in the Court's Slip Opinion," but rather "whether the GNZ has provided a sufficient showing that a short stay is necessary to permit the development and implementation of a traceability program . . ." NZ Mot. at 10. Thus, New Zealand's argument depends upon redefining "merits," to focus on its motion to stay rather than the merits of the substantive claims in this lawsuit. But this argument is circular, and thus illogical: that the Court should grant the motion to stay because New Zealand is likely to succeed on its motion to stay. Moreover, New Zealand cites no case law for this novel interpretation.

Even if this Court were to accept New Zealand's redefinition of "merits," New Zealand has not made a sufficient showing that a stay is warranted here because, as discussed below, New Zealand will not suffer irreparable harm absent a stay and the balance of equities and public interest weigh in favor of denying the motion and keeping the current import ban in place.

**B.     New Zealand is not likely to suffer irreparable harm in the absence of a stay.**

The irreparable harm factor also weighs against granting New Zealand's motion. New Zealand claims that it and its seafood industry will be irreparably injured by "the loss of its ability to satisfy the [certificate of admissibility] requirement in the absence of the ability to implement a traceability program, with the consequent result that seafood lawfully harvested will be banned from importation." NZ Mot. at 10–11. New Zealand also argues that it will suffer irreparable damage to its reputation if its motion is denied. *Id.* These arguments fail for several reasons.

As an initial matter, the New Zealand Government, not the New Zealand seafood industry, is the intervenor in this lawsuit. The New Zealand Government cannot base its irreparable harm

PLAINTIFFS' RESPONSE                                                                                                      3

argument on harms to the New Zealand seafood industry, a third party. *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 213 (D.D.C. 2012) (rejecting irreparable harm argument "because it shows irreparable harm not to [plaintiff], but to third parties", and quoting *Winter's* holding that "a plaintiff seeking a preliminary injunction must establish . . . that he is likely to suffer irreparable harm in the absence of preliminary relief"); *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) ("[M]onetary injury to third parties . . . or to the economy in general provides an even weaker justification for a finding of "irreparable harm." After all, the *Nken* irreparable harm standard is 'whether the *applicant* will be irreparably injured absent a stay.'") (emphasis in original). At most, the Court can consider any impacts to New Zealand's seafood industry in its public interest prong analysis. *Cardinal Health*, 846 F. Supp. 2d at 213.

Even if impacts to New Zealand's seafood industry were relevant to the Court's consideration of irreparable harm to the New Zealand Government, the alleged harms are not irreparable. The fact that the New Zealand Government is only asking for a *temporary* stay proves this point. The harms that the New Zealand Government and the New Zealand seafood industry allegedly will suffer due to the fact that New Zealand lacks an adequate traceability system will be remedied when New Zealand develops and implements that traceability system. And according to the New Zealand Government, this can happen quite quickly—by January 31, 2023. Thus, these harms are not "irreparable."

The "reparability" of New Zealand's alleged harms also highlights another significant issue with New Zealand's argument: that any alleged harm is self-inflicted. "[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (3d ed. Apr. 2022 update); *see also Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v.*

*United States*, 393 F. Supp.3d 1271, 1278–79 (Ct. Int'l Trade 2019) (denying preliminary injunction and finding no irreparable harm where harm is self-inflicted).

New Zealand has known for years that it lacked an adequate traceability system. Sea Shepherd raised this argument in its Renewed Motion for a Preliminary Injunction, to support its argument that an order from the Court would redress Sea Shepherd's injury. *See* ECF No. 49 at 9–10 (discussing lack of traceability system and its implications); *see also* Second Dec. of Dr. Glenn Simmons, ECF No. 49-3 at ¶¶22–40 (same). Sea Shepherd's argument is based significantly on analysis from New Zealand itself, which recognized at least as early as 2019 that the lack of a traceability system itself was a serious issue. In a March 28, 2019 New Zealand Government briefing document assessing the impacts of a potential United States import ban (if the United States were to grant Sea Shepherd's first Petition), the New Zealand Government stated:

> In the face of an import ban, maintaining the balance of the wider $200 million of annual fisheries exports to the US would require MPI to establish a traceability and certification programme to demonstrate product is not from the area associated with the import ban. This would incur costs for industry and MPI. It would also take time to establish and so disrupt wider trade and result in lost market access as US buyers switch to alternative suppliers.

Second Dec. of Brett Sommermeyer, Ex. 8, ECF No. 49-1, at P-201.

Despite knowing the risk posed by the lack of a traceability system—and despite the fact that New Zealand believes it can develop and implement a system in less than two months—for almost four years New Zealand has failed to develop and implement such a system. It has chosen the "wait and see" approach and, now that the risks of that approach have materialized, it seeks a stay to avoid the repercussions of its delay. Part-and-parcel of the self-inflicted nature of New Zealand's harm is that New Zealand has had the power to avoid that harm by developing and implementing a traceability system. For these reasons, New Zealand's harms are not irreparable.

Turning to New Zealand's alleged harms, New Zealand claims it will be harmed because

"seafood lawfully harvested will be banned from importation." NZ Mot. at 11. New Zealand cites no support for this statement, but earlier in its brief it argues that implementing the ban prior to a traceability system being in place "would unfairly penalize seafood exporters and importers for selling fish and fish products in the U.S. that are outside the scope of the PI." *Id.* at 5. While New Zealand is vague about how or to what degree seafood exporters and importers would be penalized by the current injunction, it appears New Zealand is asserting irreparable harm due to the ban's financial impact on third parties. But again, New Zealand cannot claim irreparable harm based on harm to third parties and, moreover, financial harm alone is not "irreparable." *Otter Products, LLC v. United States*, 37 F. Supp. 3d 1306, 1315 (Ct. Int'l Trade 2014).

And, in any event, the estimated alleged financial harm to these third parties is overinflated. New Zealand highlights the estimated *annual* financial impact if the preliminary import ban were implemented prior to a traceability system being in place. NZ Mot. at 5 (stating that annual exports to the United States of the nine species covered by the ban total about $9 million NZD); Declaration of Chad Tustin in Support of the Government of New Zealand's Motion, ECF No. 115, Ex. B ("Tustin Dec."), ¶7 (same). But New Zealand only asking for a stay until January 31, 2023; thus, the relevant time period for assessing any financial impact is the time period between the earliest the Court might grant the motion, December 14, 2022, and January 31, 2023—or 48 days. The financial impact of the ban during this short period of time would thus be a fraction of the figure touted by New Zealand.[1]

---

[1] Using a rough calculation, the financial impact would be 13.2 percent of the $9 million NZD impact asserted by New Zealand, or approximately $1.18 million NZD (calculated by dividing 48 days by 365 days and multiplying this result by 9 million). New Zealand has not provided information regarding whether the rate of imports into the United States is consistent throughout the year. While this rate may not be consistent, this calculus is illustrative of the exaggerated financial harm New Zealand alleges will befall its seafood industry absent its requested stay.

PLAINTIFFS' RESPONSE                                                                                                  6

New Zealand also claims irreparable harm due to the "reputational damage that [it] may suffer if its request for a temporary stay is denied." NZ Mot. at 11. But while reputational harm can be irreparable, the showing "'must be concrete and corroborated, not merely speculative.'" *Toxco Inc. v. Chu*, 724 F. Supp. 2d 16, 30 (D.D.C. 2010). Mr. Tustin's statements regarding harm to New Zealand's reputation are flimsy and have insufficient foundation; they amount to "merely conclusory allegations of stigma [that] do not suffice to establish imminent injury." *Brodie v. U.S. Dep't of Health & Human Servs.,* 715 F. Supp. 2d 74, 84–86 (D.D.C. 2010); *Techsnabexport, Ltd. v. U.S.*, 795 F. Supp. 428, 429 (Ct. Int'l Trade 1992) (where plaintiffs submitted affidavits alleging impacts to long-term business relationships, finding that "[a]llegations of harm to potential future business relations are too speculative to constitute irreparable harm"). Mr. Tustin only vaguely refers to purported reputational harm in one paragraph of his declaration, Tustin Dec., ¶6, provides only an unsubstantiated example of what such harm might consist of, and provides no quantification of the cause of the harm (hypothetical at-risk "purchase contracts") relative to New Zealand's export fishery as a whole.

Moreover, this conjectural reputational damage is a thinly-veiled re-casting of New Zealand's alleged financial harm, as New Zealand's reputational argument is tied to the fact that the ban will put the seafood industry's commercial relationships at risk. *Id.* The Court should reject New Zealand's claim of speculative harm to its reputation. *Cf.* PI Order at 61 (declining to "engage in the kind of 'prognostication' the Government invites with its speculative assertion that enjoining certain imports from New Zealand will discourage other nations from protecting marine mammals"); *see also Cardinal Health*, 846 F. Supp. 2d at 213 (rejecting argument that damage to business's reputation was irreparable in part because the argument was "simply a rephrasing of [plaintiff's] economic loss argument," which the court had already rejected).

Finally, New Zealand's claim of irreparable harm due to "the loss of its ability to satisfy the [certificate of admissibility] requirement in the absence of the ability to implement a traceability program" is meritless. NZ Mot. at 10–11. The import ban should have no impact on New Zealand's ability to develop and implement an adequate traceability program. If anything, leaving the ban in effect will incentivize New Zealand to develop and implement the traceability program quickly, such that the certificate of admissibility ("COA") requirements can be met.

### C.     The equities favor denying New Zealand's motion.

The third factor requires the Court to "balance the competing claims of injury . . . and consider the effect that granting or denying injunctive relief will have on each party." PI Order at 61 (quoting *Nat. Res. Def. Council v. Ross*, 331 F. Supp. 3d 1338, 1369 (Ct. Int'l Trade) (cleaned up). This Court already has balanced the equities in this case and found that they favor granting an immediate injunction. *See* PI Order at 61–62. New Zealand advances two justifications for arguing the equities tip in favor of a stay of the injunction: (1) the length of the temporary stay, and (2) the purported harm to the New Zealand seafood industry caused by the injunction before New Zealand has time to install a traceability system. *See* NZ Mot. at 11. Neither justification is sufficient to disturb the Court's original analysis and finding that the equities favor an immediate injunction.[2]

First, to the extent that developing and implementing a traceability system imposes any burden on New Zealand, that burden is of short duration and self-inflicted. Any purported harm to New Zealand or its seafood industry does not stem from the injunction but rather New Zealand's failure to have a traceability system, a deficiency about which it has been on notice of for years,

---

[2] In its Opposition to Plaintiffs' Renewed Motion for Preliminary Injunction, ECF No. 55, New Zealand failed to address the balancing of equities or public interest factors so it is odd that now, when it is discussing purported harm flowing from the Court's injunction, it claims the equities and public interest weigh in favor of a temporary stay. There is no reason why New Zealand could not have raised these arguments previously.

as noted above. Moreover, as also discussed above, New Zealand has not adequately quantified the purported reputational harm it will suffer, if any, before January 31, 2023, and its suggestions of financial harm are overstated. And in any event, any temporary economic harm does not outweigh the potential harm to Sea Shepherd's interests in the Māui dolphin. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) ("If such [irreparable environmental] injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment.").

Second, the Court already considered the impacts on New Zealand and its seafood industry and determined an injunction was appropriate despite those impacts. *See* PI Order at 63 ("[T]he court does not minimize the considerations raised by New Zealand or U.S. industry -- consumer welfare, economic stability, and community impact . . ."). New Zealand is simply re-raising arguments the Court evaluated and rejected when it granted Sea Shepherd's preliminary injunction motion.

On the other side of the scale, New Zealand's alleged temporary injuries pale in comparison when balanced against the risk of long-term and permanent harm to Sea Shepherd's interests. *See id.* at 61–62. The Māui dolphin is on the brink of extinction, and bycatch of even a single dolphin constitutes irreparable harm. *Id.* at 57–58.

New Zealand attempts to downplay the potential impact of its requested stay to the Māui dolphin, claiming "the likelihood that a Māui dolphin will be harmed during the requested stay period is virtually zero" because "there is a very low likelihood of a fatality or serious injury." NZ Mot. at 4. But this Court already considered and rejected this same argument when finding that Sea Shepherd was likely to suffer irreparable harm absent preliminary injunctive relief:

> [A]s Plaintiffs persuasively argue, where -- as here -- the probability "that a single fishery-induced mortality will push the population closer to . . . extinction" "is

> high," "the relatively low probability of" bycatch stemming from the species' meager numbers "must not foreclose . . . protections against fisheries threats." Pls.' Resp. Br. at 47–48. Indeed, to hold otherwise "would deny MMPA protections to marine mammal populations that need them most." Id. at 47. The court, therefore, concludes that in a case such as this one -- where there is "so little margin for error," id. at 47 -- the "likelihood of irreparable harm" prong weighs in favor of injunctive relief.

PI Order at 60–61. This same reasoning dispels New Zealand's argument here.[3] In fact, the temporary nature of New Zealand's requested stay may likely *increase* the risk of bycatch because fishing effort in the Māui range may increase both to make up for days lost already due to the injunction and because fishers will know that the injunction will become effective again on February 1, 2023.

New Zealand points out that, when NOAA denies or terminates a comparability finding, the ensuing import ban is not effective until 30 days from the date of publication of the denial or termination in the Federal Register. NZ Mot. at 7 (discussing 50 C.F.R. § 216.24(h)(9)(i)). But here, NOAA has not denied or terminated a comparability finding; rather, the Court carefully

---

[3] New Zealand also pointed to its estimates of fisheries bycatch to support this argument. NZ Mot. at 5. In granting Sea Shepherd's motion for a preliminary injunction, this Court, while not attempting to resolve the scientific debate regarding by bycatch estimates, found that NOAA "has not met 'minimal standards of rationality' in maintaining that the 2012 incident was the last instance of Māui dolphin bycatch by a commercial fishing vessel." PI Order at 58, n.64. The Court also expressed uncertainty regarding whether New Zealand's monitoring coverage is "high enough to reliably detect any non-zero capture rate," uncertainty that the Court found was "compounded by the Government of New Zealand's acknowledgement that 'most [Māui dolphin] carcasses are not recovered,' and by the reality that even when carcasses are recovered, the cause of death may not be determinable[.]" *Id*. at 58–59, n.64 (internal citations omitted). Thus, the Court should give no credence to New Zealand's highly suspect bycatch rates. *See also* Second Dec. of Elisabeth Slooten, ECF No. 49–2, ¶¶42–55 (discussing how New Zealand's bycatch estimates are under-reported and unreliable). New Zealand attaches a record it submitted as part of its November 2021 Comparability Finding Application that it claims provides "updated information on Māui dolphin and bycatch estimates," but the bycatch estimates in this record are the same as those in New Zealand's earlier application. *Compare* NZ Mot. at Ex. C at 1–2, *with* Second Sommermeyer Dec., ECF No. 49-1, at P-066 (bycatch estimates in New Zealand's earlier application). Notably, New Zealand decreased its PBR calculation, from 0.11 to 0.10. *Id.*

considered Sea Shepherd's preliminary injunction motion and exercised its discretion to order an immediate import ban. In doing so, the Court took into account the fact that this case involves a critically endangered species, and that absent an import ban Sea Shepherd was likely to suffer irreparable harm to its interests in protecting that dolphin and preventing its continued decline towards extinction. The Marine Mammal Protection Act itself provides that the United States "shall" undertake emergency rulemaking actions if it "finds that the incidental mortality and serious injury of marine mammals from commercial fisheries is having, or is likely to have, an immediate and significant adverse impact on a stock or species[.]" 16 U.S.C § 1387(g)(1).[4] Sea Shepherd's Petitions invoked this emergency provision, and this Court found that Sea Shepherd was likely to succeed on its Claim challenging NOAA's denial of their Petitions asking for an immediate import ban. PI Order at 52–56. Thus, the Court was well within its grounds to exercise its discretion to order an immediate import ban immediately.

When evaluating the equities courts are "guided by the MMPA's purpose, which—at its base—is to preserve marine mammals." PI Order at 61 (citing *Nat. Res. Def. Council*, 331 F. Supp. 3d at 1369). New Zealand has not met its burden to show that the equities favor ignoring that purpose, especially in the case of the critically endangered Māui dolphin.

**D.    The public interest will be served by denying the stay of the injunction.**

The Court also already considered the effect of an injunction on the public interest and concluded "because the MMPA is clear that the 'wellbeing of marine mammals takes precedence,'" an immediate injunction is in the public interest. *Id.* at 64. The logical corollary to that conclusion is that a stay of the injunction, even a temporary one, would *not* be in the public interest.

---

[4] Although this section applies to domestic fisheries, in its publication of the final Imports Rule, NOAA referenced this section as support for extending a similar emergency rulemaking regime to the foreign fisheries context. *See* 81 Fed. Reg. 54390, 54395 (col. 2 & 3) (Aug. 15, 2016).

PLAINTIFFS' RESPONSE                                                                                                          11

New Zealand argues only that "the public has a strong interest in ensuring that the GNZ complies with the COA requirement." NZ Mot. at 11. Sea Shepherd does not disagree with that contention in principle. However, a stay of the injunction to develop a traceability system that should have already been in place is not the only way to comply with the COA requirement. If a COA cannot be provided, than those uncertified fish and fish products cannot be imported into the United States. That result also achieves compliance with the COA regulatory scheme and thus serves the public interest articulated by New Zealand. And the sooner New Zealand implements its traceability system, the sooner the requisite COA can be provided. Denying New Zealand's motion for a stay will incentivize all parties involved, especially New Zealand, to develop and implement the traceability system as quickly as possible, thus further serving the public interest.

**II.     Other arguments raised by New Zealand in support of its motion similarly fail.**

New Zealand makes several additional arguments or points that do not fit within the factors addressed above. Thus, the Court need not consider them in order to rule on—and deny—New Zealand's motion. However, given the Court's discretion when ruling on motions to stay, Sea Shepherd addresses several of these arguments below.

First, New Zealand points to fact that the United States has told the Court that it expects to make a decision on New Zealand's November 2021 Comparability Finding Application "'well before the current regulatory deadline of December 31, 2023.'" *Id.* at 7 (quoting ECF No. 112 at 1). According to New Zealand, "[i]f NOAA finds that the GNZ is entitled to a new finding of comparability, then the pending litigation and current PI will become moot because a now valid comparability finding will once again take effect." *Id.* at 7–8. However, as Sea Shepherd explained in its recent filing, NOAA's decision will not necessarily moot its case:

> [I]t is premature to reach such a conclusion and Plaintiffs do not concede that outcome. Any impact will depend on several factors, including (for example), the

>nature, scope, timing, and substance of NOAA's decision—including whether, if NOAA issues new comparability findings for the relevant fisheries, those findings are "valid." Plaintiffs could potentially seek to supplement their existing complaint with an additional claim challenging any new comparability findings as arbitrary and capricious. Once NOAA makes its decision on the Application, the Parties can more fully brief the Court on the impacts, if any, of that decision on Plaintiffs' case.

ECF No. 117 at 2. Regardless, NOAA's decision on the pending Comparability Finding Application is not relevant to whether the Court should grant New Zealand's motion to stay.

New Zealand makes a revealing statement about requesting such a short stay despite the "significant" and "lengthy" process it must go through to develop and implement a traceability system. *See* Tustin Dec., ¶8. New Zealand states that "the granting of the stay will help minimize the burden on the GNZ and importers if a new comparability finding is issued *before the expiration of the requested stay or even shortly thereafter*." NZ Mot. at 8 (emphasis added). Thus, New Zealand's request is not merely about preventing the alleged harms, but also appears designed to buy NOAA more time to make its determination on the Comparability Application without a ban in place, something NOAA has had plenty of time to do. This is not a proper justification for staying the Court's well-reasoned preliminary injunction.

Second, New Zealand's reliance on Sea Shepherd's arguments in response to the United States' motion for voluntary remand is taken out of context. NZ Mot. at 8. This reliance ignores the fact that since Sea Shepherd's response was filed, the Court has granted Sea Shepherd's motion for a preliminary injunction and ordered an import ban, and the United States has withdrawn its motion. Thus, the "status quo" is the import ban currently in place. *See* Black's Law Dictionary (11th ed. 2019) (defining "status quo" as "[t]he situation that currently exists"). Moreover, New Zealand mischaracterizes Sea Shepherd's argument, which was that NOAA, in delaying making a decision on New Zealand's November 2021 Comparability Finding Application, is also delaying its consideration of important factual developments regarding the Māui dolphin that have taken

PLAINTIFFS' RESPONSE                                                                                                  13

place since NOAA denied Sea Shepherd's Petitions and granted New Zealand's current comparability findings.[5] Broadly speaking, Sea Shepherd is opposed to any further delay in additional protections for the Māui dolphin.

Third, New Zealand tries, unsuccessfully, to rebut the Court's finding—based on statements from NOAA—that New Zealand's request for an early comparability finding for the West Coast North Island multi-species set-net and trawl fisheries waived the Imports Regulation's exemption period. *See* NZ Mot. at 9.[6] The Court was aware of the additional one-year extension when it made its finding. Further, New Zealand's argument is nonsensical—it cannot have a regulatory right to an extension of a right it had already waived. This is contrary to the notion of waiver. *See* Black's Law Dictionary (11th ed. 2019) (defining "waiver" as "[t]he voluntary relinquishment or abandonment — express or implied — of a legal right or advantage"). It was New Zealand's request for early comparability findings that caused "the fisheries identified . . . [to] be under the full effect of [the Imports Regulation]." PI Order at 53, n.60 (quoting NOAA's Dec. Mem. at 2, 8) (emphasis in original). New Zealand cannot opt back in to the regulatory exemption it waived when it decided to apply for early comparability findings.

---

[5] These include New Zealand's 2020-2021 Māui Dolphin Population Survey Report; its decision to significantly increase commercial trawl and set net fishing in Māui dolphin habitat on the west coast of the North Island; and at least one recent confirmed female Māui dolphin death. *See* Dkt. 89 (population survey report); ECF No. 81-1, Ex. 4 at 1, 3–4 (describing proposal to increase allowed catch for commercial snapper fishery); ECF No. 84 at 5 (New Zealand brief noting decision to increase commercial snapper catch, but that increase was enjoined pending outcome of lawsuit challenging increase); ECF Nos. 71-1 & 71-2 (documentation related to February 2021 observation of beachcast female Māui dolphin). This new evidence weighs strongly against NOAA's granting New Zealand's November 2021 Comparability Finding Application for fisheries that overlap with the Māui dolphin's range. If NOAA were to grant the Application for those fisheries, this evidence would raise serious questions about the validity of that decision.

[6] Notably, NOAA did not believe extensions of the original five-year grace period negated New Zealand's waiver. *See* Defs. Suppl. Br. at 2, ECF No. 76 (noting the first one-year extension of the five-year exemption due to the global pandemic but still concluding that New Zealand's early application for comparability findings waived the regulation's grace period).

## CONCLUSION

For the forgoing reasons, Sea Shepherd respectfully requests the Court deny New Zealand's motion.

Dated this 12 day of December, 2022.

                                        Respectfully submitted,

                                      s/ *Lia Comerford*
                                      Lia Comerford
                                      Earthrise Law Center at Lewis & Clark Law School
                                      10101 S. Terwilliger Blvd.
                                      Portland, OR 97219
                                      (503) 768-6823
                                      comerfordl@lclark.edu

                                      Kevin Cassidy
                                      Earthrise Law Center at Lewis & Clark Law School
                                      P.O. Box 445
                                      Norwell, MA 02061
                                      (781) 659-1696
                                      cassidy@lclark.edu

## CERTIFICATE OF COMPLIANCE

Pursuant to Court of International Trade Standard Chambers Procedure 2(B), I hereby certify that Plaintiffs' Response in Opposition to the Motion of the Government of New Zealand for a Temporary Stay of the Effective Date of the Court's Preliminary Injunction complies with the word limitation of 14,000 words. There are 5,129 words in this document (including headings, footnotes, and quotations), as counted by Microsoft Word, the word processor used to prepare the brief.

Dated this 12th day of December, 2022.

                                              s/ *Lia Comerford*
                                              Lia Comerford
                                              Earthrise Law Center at Lewis & Clark Law School
                                              10101 S. Terwilliger Blvd.
                                              Portland, OR 97219
                                              (503) 768-6823
                                              comerfordl@lclark.edu