Slip Op. 23-92

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND and SEA SHEPHERD CONSERVATION SOCIETY,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNITED STATES, GINA M. RAIMONDO, in her official capacity as Secretary of Commerce, UNITED STATES DEPARTMENT OF COMMERCE, a United States government agency, JANET COIT, in her official capacity as Assistant Administrator of the National Marine Fisheries Service, NATIONAL MARINE FISHERIES SERVICE, a United States government agency, JANET YELLEN, in her official capacity as Secretary of the Treasury, UNITED STATES DEPARTMENT OF THE TREASURY, a United States government agency, ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, a United States government agency,[1]<br><br>     Defendants,<br><br>  and<br><br>NEW ZEALAND GOVERNMENT,<br><br>     Defendant-Intervenor. | Before: Gary S. Katzmann, Judge<br>Court No. 20-00112 |

## <u>OPINION</u>

[The court denies Defendants' Partial Motion to Dismiss.]

Dated:  <u>June 21, 2023</u>

---

[1] Per CIT Rule 25(d), named officials have been substituted to reflect the current officeholders.

Lia Comerford, and Kevin Cassidy, Earthrise Law Center at Lewis & Clark Law, of Portland, OR and Norwell, MA, for Plaintiffs Sea Shepherd New Zealand and Sea Shepherd Conservation Society.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendants United States, Gina M. Raimondo, United States Department of Commerce, National Marine Fisheries Service, Janet Yellen, United States Department of the Treasury, Alejandro Mayorkas, and United States Department of Homeland Security.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel was Jason S. Forman, Office of the General Counsel, National Oceanic and Atmospheric Administration, of Silver Spring, MD.

Warren E. Connelly, Robert G. Gosselink and Kenneth N. Hammer, Trade Pacific PLLC, of Washington, D.C., for Defendant-Intervenor New Zealand Government.

Katzmann, Judge:  Earlier this month, the world observed World Ocean Day, an international day, recognized by the United Nations, dedicated to "unit[ing] and rall[ying] . . . to protect and restore our blue planet."[2]  Relatedly, the court today returns to the precarious state of the Māui dolphin -- the world's smallest dolphin, found only in the waters around New Zealand -- of which an estimated forty-eight to sixty-four individuals remain.[3]  Since May 2020, Plaintiffs Sea Shepherd New Zealand Ltd. and Sea Shepherd Conservation Society[4] have pursued a line of litigation before this court based on the fundamental claim that as a result of incidental capture --

---

[2] About, World Ocean Day, www[.]worldoceanday[.]org/about/ (last visited June 15, 2023). "World Ocean Day" was officially recognized by the United Nations in 2008 and is celebrated annually on June 8.  Mission and History, World Ocean Day, www[.]worldoceanday[.]org/about/mission-and-history/ (last visited June 15, 2023).  [Please note, in order to disable links to outside websites, the court has removed the "http" designations and bracketed the periods within all hyperlinks.  For archived copies of the webpages cited in this opinion, please consult the docket.]

[3] See Facts About Hector's & Māui Dolphin, Dep't of Conservation, www[.]doc[.]govt[.]nz/nature/native-animals/marine-mammals/dolphins/maui-dolphin/facts/ (last visited June 15, 2023).

[4] Sea Shepherd New Zealand Ltd. is a registered New Zealand charity whose purpose is to protect and preserve New Zealand's ocean environment, see First Suppl. Compl. ¶ 16, Nov. 24, 2020, ECF No. 46, and Sea Shepherd Conservation Society is a 501(c)(3) international nonprofit corporation incorporated in Oregon dedicated to safeguarding the biodiversity of the planet's ocean ecosystems, see id. ¶ 17.

also referred to as "bycatch" -- in gillnet and trawl fisheries within their range, the Māui dolphin population is declining such that a ban on imports of fish and fish products from New Zealand is required by the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1361 et seq.  That statute -- the MMPA -- aims to protect marine mammals by setting forth standards applicable to both domestic commercial fisheries and to foreign fisheries, like those in New Zealand, that wish to export their products to the United States.[5]

In November 2022, after dismissing the first count of Plaintiffs' Complaint, this court -- upon evaluation of the factors that govern a request for injunctive relief -- granted Plaintiffs a preliminary injunction to preserve the status quo of their remaining second and third counts pending final adjudication.  That preliminary injunction ordered the immediate ban on imports into the United States of fish and fish products deriving from nine species caught in New Zealand's West Coast North Island inshore trawl and set net fisheries, unless affirmatively identified as having been caught with a gear type other than gillnets or trawls.  The preliminary injunction remains in effect at present.

The court is now asked to consider the third count of Plaintiffs' Complaint, which alleges that the U.S. Department of Commerce ("Commerce") acted arbitrarily, capriciously, and otherwise not in accordance with law in issuing to New Zealand's West Coast North Island inshore trawl and set net fisheries findings of comparability with U.S. standards.  On January 1, 2023, these "comparability findings" issued by Commerce expired on their own terms.  Accordingly,

---

[5] In proceeding under the MMPA and seeking an import ban, Plaintiffs here are building upon a legal theory first presented to this court in litigation involving Mexico's vaquita, the world's smallest porpoise on the verge of extinction.  See Nat. Res. Def. Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1338 (2018); Nat. Res. Def. Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1381 (2018); Nat. Res. Def. Council, Inc. v. Ross, 42 CIT __, 348 F. Supp. 3d 1306 (2018); Nat. Res. Def. Council, Inc. v. Ross, 774 F. App'x. 646 (Fed. Cir. 2019); Nat. Res. Def. Council, Inc. v. Ross, 44 CIT __, 456 F. Supp. 3d 1292 (2020).

Defendants -- several United States agencies and officials (collectively "the United States" or "the Government") -- here ask the court to dismiss as moot Plaintiffs' third claim. The Government of New Zealand -- as Defendant-Intervenor -- supports the United States' instant motion; while Plaintiffs oppose it on the grounds that the expiry of New Zealand's comparability findings has not mooted their attendant claim.

Because the court concludes that aspects of Plaintiffs' request for declaratory relief under their third claim remain live, the court denies Defendants' Partial Motion to Dismiss.

**BACKGROUND**

The court presumes familiarity with its decisions in <u>Sea Shepherd N.Z. v. United States</u>, 44 CIT __, 469 F. Supp. 3d 1330 (2020) ("<u>Sea Shepherd I</u>"), <u>Shepherd N.Z. v. United States</u>, 46 CIT __, 606 F. Supp. 3d 1286 (2022) ("<u>Sea Shepherd II</u>"), and <u>Shepherd N.Z. v. United States</u>, 47 CIT __, 611 F. Supp. 3d 1406 (2023) ("<u>Sea Shepherd III</u>"), but for ease of reference, sets out the legal and procedural background necessary to contextualize the instant motion.

### I.    *Legal Background*

#### A.    *The Marine Mammal Protection Act*

Congress enacted the MMPA, 16 U.S.C. § 1361 <u>et seq.</u>, to protect marine mammal species that "are, or may be, in danger of extinction or depletion as a result of man's activities" from "diminish[ing] below their optimum sustainable population." <u>Id.</u> § 1361(1)–(2). To achieve this directive, the MMPA mandates a ban on "the importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals <u>in excess of United States standards</u>." <u>Id.</u> § 1371(a)(2) (emphasis added) ("Import Provision").

The MMPA does not otherwise define the phrase "United States standards," <u>id.</u>, but the National Oceanic and Atmospheric Administration ("NOAA") -- a bureau within Commerce --

has defined the concept, in part, through the promulgation of agency regulations.  See 50 C.F.R.

Part 216 ("Imports Regulation"); see also Fish and Fish Product Import Provisions of the Marine

Mammal Protection Act, 81 Fed. Reg. 54390 (Dep't Com. Aug. 15, 2016).

### B.    NOAA's Imports Regulation

Central to the instant motion, NOAA's Imports Regulation requires foreign harvesting

nations to secure "comparability findings" for their fisheries importing fish and fish products into

the United States and establishes that any fish or fish product harvested in a fishery for which a

"valid comparability finding" is not in effect is in excess of "U.S. standards," and thereby

prohibited from import.  See 50 C.F.R. § 216.24(h)(1)(i).[6,7]  Receipt of a comparability finding

---

[6] 50 C.F.R. § 216.24(h)(1)(i) provides in relevant part:

> [T]he importation of commercial fish or fish products which have been caught with
> commercial fishing technology which results in the incidental kill or incidental
> serious injury of ocean mammals in excess of U.S. standards or caught in a manner
> which the Secretary has proscribed for persons subject to the jurisdiction of the
> United States are prohibited.  For purposes of paragraph (h) of this section, a fish
> or fish product caught with commercial fishing technology which results in the
> incidental mortality or incidental serious injury of marine mammals in excess of
> U.S. standards is any fish or fish product harvested in an exempt or export fishery
> for which a valid comparability finding is not in effect.

(Emphasis added).

[7] The Regulation further instructs that "[t]he prohibitions of paragraph (h)(1) . . . shall not apply
during the exemption period," id. § 216.24(h)(2)(ii), which is the one-time, now seven-year period
that commenced on January 1, 2017, id. § 216.3; see also Modification of Deadlines Under the
Fish and Fish Product Import Provisions of the Marine Mammal Protection Act, 87 Fed. Reg.
63955, 63955 (Dep't Com. Oct. 21, 2022) ("Deadline Modification").  But "nothing prevents a
nation from . . . seeking a comparability finding during th[is] . . . exemption period."
Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection
Act-Notification of Rejection of Petition and Issuance of Comparability Findings, 85 Fed. Reg.
71297, 71297 (Dep't Com. Nov. 9, 2020), P.R. 1 ("Comp. Finding Determ.").
    As established, infra, the Government of New Zealand requested such early comparability
findings for its West Coast North Island inshore trawl and set net fisheries, which -- by NOAA's
own assessment -- rendered such fisheries presently subject to "the full effect of the [Imports
Regulation]."  See Mem. from A. Cole to C. Oliver, re: Decision Memorandum for the Denial of
Petition for Rulemaking and Issuance of a Comparability Finding for the Government of New

signifies that NOAA has assessed a nation's fisheries to satisfy certain mandatory regulatory conditions. See id. § 216.24(h)(6)(iii), (h)(7) (enumerating the requirements for a comparability finding).

In the ordinary course, "a comparability finding shall remain valid for 4 years from [its] publication or for such other period as [NOAA] may specify." Id. § 216.24(h)(8)(iv). "To seek renewal of a comparability finding," "the harvesting nation must submit to [NOAA] the application and the [requisite] documentary evidence" "every 4 years or" "by November 30 of the year prior to the expiration date of its current comparability finding." Id. § 216.24(h)(8)(v).

## II. *Procedural Background*

Contending that Māui dolphins are being "caught with commercial fishing technology . . . result[ing] in . . . incidental kill[s] or . . . serious injury . . . in excess of United States standards," 16 U.S.C. § 1371(a)(2), on February 6, 2019, Plaintiffs submitted a formal petition to the Government asking it to utilize its rulemaking authority[8] to ban the import of fish and fish products originating from New Zealand fisheries in the Māui dolphin's range that employ either gillnets or trawls. See Sea Shepherd Legal et al., Petition to Ban Imports of Fish and Fish Products from New Zealand 3, 12 (2019), P.R. 1 ("February 2019 petition").[9] NOAA rejected Plaintiffs'

---

Zealand's Fisheries at 2, 8 (Dep't Com. Oct. 27, 2020), P.R. 3104 (emphasis added). Accordingly, those fisheries currently require "valid comparability finding[s]" to comport with "U.S. standards" under NOAA's Imports Regulation. 50 C.F.R. § 216.24(h)(1)(i).

[8] Pursuant to subsection 553(e) of the Administrative Procedure Act ("APA"), which provides: "[e]ach agency shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).

[9] The court notes that as a general matter, any public record ("P.R.") page numbers reflect those listed in the Supplemental Administrative Record Index, Nov. 23, 2020, ECF No. 44-2. But here, see Administrative Record Index, Nov. 23, 2020, ECF No. 44-1.

February 2019 petition on July 10, 2019, <u>see</u> <u>Notification of the Rejection of the Petition to Ban</u> <u>Imports of All Fish and Fish Products from New Zealand That Do Not Satisfy the Marine Mammal</u> <u>Protection Act</u>, 84 Fed. Reg. 32853, 32854 (Dep't Com. July 10, 2019), P.R. 5426,[10] and Plaintiffs filed suit against the United States in this court on May 21, 2020, <u>see</u> Original Compl., May 21, 2020, ECF No. 5.

Meanwhile, on June 24, 2020, the Government of New Zealand announced new fishing measures to enhance protections of Māui dolphins. <u>See</u> Letter from Hon. Stuart Nash, Minister of Fisheries, re: Hector's and Māui Dolphin Threat Management Plan at 3 (July 24, 2020), P.R. 580. On the belief that these revised measures are comparable to "United States standards" under the MMPA, the New Zealand Government requested that NOAA perform comparability assessments for its "West Coast North Island inshore trawl fishery" and "West Coast North Island inshore set net fishery" pursuant to the Imports Regulation. <u>Id.</u>

In light of the New Zealand Government's request for comparability assessments, as well as in light of certain assessed differences between Plaintiffs' February 2019 petition before the agency and the May 2020 complaint before this court, on August 13, 2020, this court granted the United States a remand so that the agency could address these intervening developments in the first instance. <u>See</u> <u>Sea Shepherd I</u>, 469 F. Supp. 3d at 1337–38; <u>see also</u> Ct. Order Granting Defs.' Mot. for Voluntary Remand, Aug. 13, 2020, ECF No. 39. As part of this remand, Plaintiffs submitted a supplemental petition asking Commerce to "ban the import of all fish and fish products originating from fisheries [operating] in . . . the entire coastline of [New Zealand's] North Island out to the 100m depth contour, that employ either set nets or trawls." <u>See</u> Sea Shepherd Legal et al., <u>Supplemental Petition to Ban Imports of Fish and Fish Products from New Zealand</u> 5 (2020),

---

[10] Here too, see Administrative Record Index, Nov. 23, 2020, ECF No. 44-1.

P.R. 5.

On November 9, 2020, Commerce again declined to impose Plaintiffs' requested import ban and instead issued comparability findings to New Zealand's West Coast North Island inshore trawl and set net fisheries. See Comp. Finding Determ. NOAA stated that the issued comparability findings were to remain in effect through January 1, 2023, subject to revocation by the agency before that date if warranted. Id. at 71298.

With their petition denied for a second time, Plaintiffs filed a Supplemental Complaint with this court on November 24, 2020. See First Suppl. Compl. This Supplemental Complaint lodged three claims, that:

(1) NOAA unlawfully withheld or unreasonably delayed agency action in violation of section 706(1) of the APA, see 5 U.S.C. § 706(1), by failing to ban the import of commercial fish and products from fish caught using gillnet and trawls in excess of U.S. standards in the Māui dolphin's range;

(2) NOAA's denial of Plaintiffs' petition for emergency rulemaking was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under section 706(2)(A) of the APA, see 5 U.S.C. § 706(2)(A); and

(3) NOAA's grant of comparability findings to the two New Zealand fisheries was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under section 706(2)(A) of the APA, see 5 U.S.C. § 706(2)(A).

See id. ¶¶ 104–112. Concerning their third claim, Plaintiffs seek two forms of relief: that this court (1) "[h]old unlawful and set aside Defendants' comparability findings"; and (2) "[d]eclare that Defendants' issuance of comparability findings to New Zealand was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law under APA, 5 U.S.C. § 706(2)(A)." Id. at 38.

Plaintiffs asked this court to preliminarily enjoin New Zealand's implicated imports, pending final resolution of the merits. See Pls.' Renewed Mot. for Prelim. Inj. at 1, Dec. 11, 2020, ECF No. 49 ("Pls.' Ren. PI Mot."). The United States and the Government of New Zealand opposed Plaintiffs' Motion for a Preliminary Injunction, see U.S. Gov't Resp. in Opp. to Pls.'

Renewed Mot. for Prelim. Inj., Jan. 15, 2021, ECF No. 57 ("Defs.' Resp. in Opp. to PI"); N.Z.

Gov't Resp. in Opp. to Pls.' Renewed Mot. for Prelim. Inj., Jan. 15, 2021, ECF No. 55 ("Def.-

Inter.'s Resp. Br."), and moved to dismiss for lack of subject matter jurisdiction Plaintiffs' first

claim of agency action unlawfully withheld, see U.S. Gov't Mot. to Dismiss Count I of Suppl.

Compl., Jan. 27, 2021, ECF No. 58 ("Defs.' Mot. to Dismiss Count I"); N.Z. Gov't Mot. to Dismiss

Count I of Suppl. Compl., Jan. 15, 2021, ECF No. 56 ("Def-Inter.'s Mot. to Dismiss Count I").

        After oral argument on the parties' respective motions and while the court was deliberating,

the Government of New Zealand submitted on November 30, 2021, an application to NOAA --

pursuant to 50 C.F.R. § 216.24(h)(8)(v) -- to secure comparability findings for its fisheries for the

period following January 1, 2023.  See Joint Status Report in Resp. to Ct.'s Order, Jan. 7, 2022,

ECF No. 90 ("Joint Status Report").  Although NOAA originally anticipated issuing new

comparability findings -- to cover the period following January 1, 2023 -- to New Zealand's

fisheries by November 30, 2022, see Joint Status Report, Oct. 27, 2022, ECF No. 102, on

November 4, 2022, the United States informed the court that NOAA would no longer be able to

meet this deadline, see U.S. Gov't Resp. to Ct.'s Oct. 28, 2022, Suppl. Qs. at 1–2, Nov. 4, 2022,

ECF No. 105.

        Correspondingly, NOAA extended the deadline from December 31, 2022, to December 31,

2023, for foreign harvesting nations to secure comparability findings for their fisheries, see

Deadline Modification, 87 Fed. Reg. at 63955, and moved before this court for a second voluntary

remand so that the agency could conform the expiration of New Zealand's comparability findings

with conclusion of the exemption period for all other foreign fisheries on December 31, 2023, see

U.S. Gov't Partial Consent Mot. to Remand at 1, Nov. 8, 2022, ECF No. 106 ("Defs.' Second

Remand Mot.").  Plaintiffs opposed this motion.  See Pls.' Opp. Br. to Defs.' Mot. for Voluntary

Remand, Nov. 23, 2022, ECF No. 107.

Because the court determined that it would benefit from oral argument on the

Government's Second Remand Motion, and because the United States submitted that said motion

need "not delay a final decision on the [parties' other] pending motions," Defs.' Second Remand

Mot. at 6, the court resolved to: (1) grant Defendants' Motion to Dismiss Plaintiffs' First Claim;

and (2) grant Plaintiffs a preliminary injunction on their remaining second and third claims,

without reaching Defendants' Second Remand Motion.  See Sea Shepherd II, 606 F. Supp. 3d at

1332; Further Order on Pls.' Mot. for Prelim. Inj., Nov. 28, 2022, ECF No. 109.  After determining

that each of the factors that govern a court's grant of injunctive relief[11] weighed in favor of

Plaintiffs, on November 28, 2022, the court issued a preliminary injunction that ordered the

immediate ban on imports into the United States of fish and fish products deriving from nine

species caught in New Zealand's West Coast North Island inshore trawl and set net fisheries, unless

affirmatively identified as having been caught with a gear type other than gillnets or trawls.  Id.[12]

Concluding that "[t]he preliminary injunction ha[d] overtaken events and supersede[d] the

soon to expire comparability findings," the United States withdrew its Second Remand Motion on

---

[11] Namely:

> (1) whether the moving party is likely to prevail on the merits of the claims;
> (2) whether the moving party is likely to suffer irreparable harm in the absence of
> a preliminary injunction; (3) the balance of equities; and (4) whether a preliminary
> injunction is in the public interest.

Sea Shepherd II, 606 F. Supp. 3d at 1310 (quoting Silfab Solar, Inc. v. United States, 892 F.3d
1340, 1345 (Fed. Cir. 2018)).

[12] On January 9, 2023, this court denied a motion from the Government of New Zealand seeking
to delay the effective date of the preliminary injunction.  See Mot. of N.Z. Gov't for Temp. Stay
of Effective Date of Ct.'s Prelim. Inj., Dec. 6, 2022, ECF No. 115 ("Def.-Inter.'s Mot. to Modify
PI"); see also Sea Shepherd III, 611 F. Supp. 3d at 1410.  As such, the preliminary injunction -- as
articulated in Sea Shepherd II and the Court's Further Order -- is presently in effect.

December 2, 2022. <u>See</u> Defs.' Notice of Withdrawal of Partial Consent Mot. to Remand Case at

1–2, Dec. 2, 2022, ECF No. 112. In so withdrawing, the United States submitted that "the

expiration of [New Zealand's] comparability findings on January 1, 2023, [would] have no impact

on the import ban . . . in place pursuant to the preliminary injunction." <u>Id.</u>

On January 1, 2023, the comparability findings issued to New Zealand's West Coast North

Island inshore trawl and set net fisheries expired on their terms.

The Government of New Zealand filed its Answer to Plaintiffs' Supplemental Complaint

on January 6, 2023. <u>See</u> N.Z. Gov't Answer to First Suppl. Compl., Jan. 6, 2023, ECF No. 128.

In light of the expiration of New Zealand's comparability findings, and before filing an answer,[13]

the United States filed on February 2, 2023, the instant motion to dismiss as moot the third claim

of Plaintiffs' Supplemental Complaint, which asks this court to set aside and declare unlawful the

now-expired comparability findings. <u>See</u> U.S. Gov't's Partial Mot. to Dismiss Count III of Pls.'

Suppl. Am. Compl. at 1, Feb. 2, 2023, ECF No. 132 ("Defs.' Mot."). While the Government of

New Zealand supports the instant motion, <u>see</u> Resp. of Gov't of N.Z. to Defs.' Mot. to Dismiss

Count III at 2, Mar. 3, 2023, ECF No. 133, Plaintiffs oppose it on the grounds that the expiry of

New Zealand's comparability findings has not mooted their attendant claim, <u>see</u> Pls.' Resp. in

Opp. to Defs.' Partial Mot. to Dismiss Count III at 3, Mar. 9, 2023, ECF No. 134 ("Pls.' Resp.").

With the United States' Reply in hand, <u>see</u> Defs.' Reply in Supp. of Partial Mot. to Dismiss Count

III of Pls.' Suppl. Am. Compl., Mar. 29, 2023, ECF No. 135 ("Defs.' Reply"), the court proceeds

to resolve the instant motion on the papers.

---

[13] <u>See</u> USCIT R. 12(a)(2). <u>See generally</u> 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1346 (3d ed. 2022) (collecting cases illuminating the majority view that filing a partial motion to dismiss stays the time for filing an answer as to other portions of the pleading).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(C).[14]

"Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions' . . . ." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (quoting United States v. Alaska S.S. Co., 253 U.S. 113, 116 (1920)).  A court's "lack of jurisdiction to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964).  This "case-or-controversy requirement subsists through all stages of federal judicial proceedings," such that an issue becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (first quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); then quoting Knox v. Serv. Emp., 567 U.S. 298, 307 (2012)).

Although the party alleging jurisdiction typically bears the burden of proving it, see, e.g., McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936), "[t]he party arguing that a case has become moot 'bears the burden of coming forward with the subsequent events that have produced that alleged result,'" Mitchco Int'l., Inc. v. United States, 26 F.4th 1373 (Fed. Cir. 2022) (quoting Hyosung TNS Inc. v. Int'l Trade Comm'n, 926 F.3d 1353, 1357 (Fed. Cir. 2019)).  Mootness "problems often require a highly individualistic, and usually intuitive, appraisal of the facts of each case."  Wright & Miller, supra note 13, § 3533.  "[E]ven the availability of a partial remedy is sufficient to prevent [a] case from being moot." Chafin, 568

---

[14] That provision endows the court with exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for" "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety," id. § 1581(i)(1)(C), such as that provided for under the MMPA's Import Provision, 16 U.S.C. § 1371(a)(2).

U.S. at 177 (second alteration in original) (quoting Calderon v. Moore, 518 U.S. 149, 150 (1996) (per curiam)).

## DISCUSSION

As has been noted, count three of Plaintiffs' Supplemental Complaint asks this court: (1) to "[h]old unlawful and set aside" the comparability findings that NOAA issued to New Zealand's West Coast North Island inshore trawl and set net fisheries; and (2) to "[d]eclare that [NOAA's] issuance of [said] comparability findings to New Zealand was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law under APA, 5 U.S.C. § 706(2)(A)."  First Suppl. Compl. at 38.  With the comparability findings expired on their own terms as of January 1, 2023, the United States now maintains that "no case or controversy remains for the Court to decide with respect to count III" of Plaintiffs' Complaint, such that the court must dismiss it as moot. Defs.' Mot. at 1.  By contrast, Plaintiffs maintain that because the challenged agency decision underlying count three -- namely, NOAA's grant of comparability findings to New Zealand -- is "capable of repetition, yet evading review," their third claim is not moot.  Pls.' Resp. at 3.  Upon an "individualistic[] and . . . intuitive[] appraisal of the facts," Wright & Miller, supra note 13, § 3533, the court denies Defendants' motion to dismiss as moot count three of Plaintiffs' Supplemental Complaint.

Because "even the availability of a partial remedy is sufficient to prevent [an issue] from being moot," Chafin, 568 U.S. at 177 (quoting Calderon, 518 U.S. at 150), and because Plaintiffs seek both injunctive and declaratory relief under count three of their Supplemental Complaint, the court examines each form of requested relief in turn.

### I.    *Plaintiffs' Request for Injunctive Relief Is Moot.*

As an initial matter, the court concludes that Plaintiffs' request for injunctive relief is moot. This is so, because the challenged comparability findings issued to New Zealand's West Coast

North Island inshore trawl and set net fisheries expired by their own terms on January 1, 2023, and -- as the Government explains -- "no fish or fish product can [now] ever enter the United States based" upon them. Defs.' Reply at 1. Thus, whether or not this court "hold[s] [the comparability findings] unlawful and set[s] [them] aside," they have -- and will continue to have -- no effect. First Suppl. Compl. at 38. Where "even a favorable decision," Murphy v. Hunt, 455 U.S. 478, 481–82 (1982), "could have no practical effect" for Plaintiffs, SKF USA, Inc. v. United States, 512 F.3d 1326, 1329 (Fed. Cir. 2008), their request for injunctive relief is moot. See Mitchco, 26 F.4th at 1378 (holding "[t]here is no question that the injunctive relief [plaintiff] seeks is moot insofar as [plaintiff] seeks an order enjoining . . . performance of [a] contract [that] the [defendant] Army has already terminated").

## II.    Plaintiffs' Request for Declaratory Relief Is Not Moot.

However, the determination that Plaintiffs' request for injunctive relief is moot does not end the inquiry. See Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 121–22 (1974) (explaining that although the termination of an economic strike "dissolved" plaintiff employers' "case for an injunction," they might "still retain sufficient interests and injury as to justify the award of declaratory relief"). Plaintiffs ask this court to "[d]eclare that [NOAA's] issuance of comparability findings to New Zealand was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law under APA, 5 U.S.C. § 706(2)(A)," First Suppl. Compl. at 38, and maintain that "because NOAA's challenged decision is capable of repetition, yet evading review," their third claim "is not moot," Pls.' Resp. at 3.

This "capable of repetition, yet evading review" exception to mootness invoked by Plaintiffs "applies 'only in exceptional situations'"; namely, where (1) "'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again'" and (2)

"'the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration.'" Ebanks v. Shulkin, 877 F.3d 1037, 1038–39 (Fed. Cir. 2017) (quoting Kingdomware Techs., Inc. v. United States, 579 U.S. 162, 170 (2016) (alterations in original)). The court concludes that certain aspects of Plaintiffs' request for declaratory relief satisfy both requirements, such that the third count of their Supplemental Complaint is not moot.

### A.    Capable of Repetition

When assessing the "capable of repetition" prong, the "question is 'whether the controversy [is] capable of repetition and not . . . whether the claimant [has] demonstrated that a recurrence of the dispute was more probable than not.'" NIKA Techs., Inc. v. United States, 987 F.3d 1025, 1028 (Fed. Cir. 2021) (alterations and emphasis in original) (quoting Honig v. Doe, 484 U.S. 305, 318 n.6 (1988)). To show that their objections to the comparability findings are "capable of repetition," Plaintiffs submit several examples of other courts affirmatively assessing this prong in the context of expired permits. See, e.g., Montgomery Env't Coal. v. Costle, 646 F.2d 568, 578–79 (D.C. Cir. 1980) ("[A] controversy concerning an initial permit may simply continue in the context of succeeding permits.").[15] A close reading of these cases reinforces that the "capable of repetition" prong defies absolute, a priori application, but rather "requires careful consideration of the relevant facts" of "an individual case." Montgomery Env't Coal., 646 F.2d at 579.

For example, in Montgomery Environmental Coalition -- the case this court deems most analogous to the instant one of those submitted by the parties -- the D.C. Circuit considered plaintiff environmentalists' challenge to the issuance of discharge permits to certain sewage treatment plants by the Environmental Protection Agency ("EPA"). Id. at 572–73. In particular,

---

[15] The parties have not submitted, and the court has not found, an example of the Federal Circuit applying the mootness doctrine in the context of an expired permit. Accordingly, the court "look[s] to the law of . . . sister circuits for guidance." In re EMC CORP, 677 F.3d 1351, 1354 (Fed. Cir. 2012).

plaintiffs contested the EPA's award of a permit to the "Blue Plains" plant on seven grounds:

> (1) refusal to consider diversion of excess capacity to alternative treatment methods,
> (2) refusal to consider a sewer hook-up moratorium,
> (3) denial of the binding character of certain planning documents,
> (4) failure to deem combined sewer overflow points as part of the "treatment works,"
> (5) improper placement of the burden of persuasion,
> (6) insufficient support in the record for deletion of the denitrification provisions, and
> (7) insufficient support for annual rather than more frequent averaging in testing water quality.

Id. at 580 n.6. Where the Blue Plains permit had expired during the course of litigation, the D.C.

Circuit undertook to "separate the claims that [were] moot from those that remain[ed] live." Id. at

573. Parsing each individually, the court concluded that "the first four objections concern[ed]

errors that [we]re liable to be repeated, but that the last three d[id] not and [we]re moot." Id. at

580 n.6.

Regarding "the first four objections," the D.C. Circuit held that because plaintiffs

challenged a "categorical legal stance" of the agency, "[t]he fact that the original permit ha[d]

expired [wa]s irrelevant." Id. at 580–81. More specifically, the court explained:

> The EPA has . . . adopted the flat position that as a matter of law it has no right to
> impose a sewer hook-up moratorium as a condition of granting a . . . permit, or to
> require diversion to alternative treatment, and it denies that it is legally bound to
> impose a denitrification requirement at Blue Plains. This categorical legal stance
> amounts to a "continuing and brooding presence, cast[ing] what may well be a
> substantial adverse effect on the interests of the petitioning parties."

Id. (last alteration in original) (quoting Super Tire Eng'g Co., 416 U.S. at 122). Determining that

it was "highly reasonable . . . that petitioners w[ould] be subjected to the same action again," the

D.C. Circuit held that plaintiffs' first four objections were not moot.

By contrast, regarding "the last three" objections, the D.C. Circuit "conclude[d] that these

issues" -- which hinged on allegations that the EPA awarded the Blue Plains permit based on

insufficient evidence, consideration of impermissible factors, and arbitrary deviations from past

practice -- "d[id] not present a reasonable expectation of repetition, and so [we]re moot." Id. at

583.  In so deciding, the D.C. Circuit explained, in part,[16] that:

> All that remains is the question of sufficiency of the evidence, whether the [EPA's] weighing of the factual evidence pertaining to a now-expired permit was defensible. The new permit['s] . . . adjudicatory hearing will develop an entirely new factual record.  There have been further studies, and there will be new testimony.  No purpose would be served in our reviewing the stale record of the earlier [permit].

Id. at 584.  Accordingly, "the last three" objections were "stated in a form that [wa]s not capable of repetition, and [were] therefore moot."  Id. at 580 n.6, 584.

Informed by the persuasive model of Montgomery Environmental Coalition, the court concludes that at least one of Sea Shepherd's objections allege "errors that are liable to be repeated," even if the majority do not.  Id. at 580 n.6.  In Plaintiffs' own words:

> Plaintiffs challenge the comparability findings as arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the MMPA, 16 U.S.C. § 1371(a)(2), within the meaning of APA section 706(2)(A) for the following reasons:
>
>> [1] New Zealand's fisheries continue to kill and injure Māui dolphins in excess of U.S. standards;
>>
>> [2] NOAA failed to exercise independent judgment in issuing the comparability determination;
>>
>> [3] in response to [New Zealand's] submission of insufficient evidence in support of its application for a comparability finding, NOAA failed to draw reasonable conclusions about the fisheries at issue; and
>>
>> [4] NOAA failed to undertake the mandatory considerations outlined in its regulations at 50 C.F.R. § 216.24(h)(7).

Pls.' Resp. to Ct.'s Apr. 11, 2022, Suppl. Qs. at 19, May 2, 2022, ECF No. 97 ("Pls.' Suppl. Qs. Resp.") (numbering and formatting added); see also First Suppl. Compl. ¶ 111 (substantively similar).

To start, the court determines that Sea Shepherd's first, second, and third objections are

---

[16] The court notes that the following excerpt is specific to the D.C. Circuit's consideration of plaintiffs' sixth objection; however, this court assesses that the reasoning is broadly representative of the D.C. Circuit's treatment of "the last three" objections.

"stated in a form that is not capable of repetition, and [are] therefore moot." <u>Montgomery Env't</u> <u>Coal.</u>, 646 F.2d at 584.

This is so, because Sea Shepherd's first and third objections -- that New Zealand is indeed killing/injuring Māui dolphins in excess of U.S. standards and has failed to substantiate its representations to the contrary -- appear merely to "question [the] sufficiency of the evidence." <u>Id.</u> at 584. Just as the D.C. Circuit in <u>Montgomery Environmental Coalition</u> deemed it important that the EPA would award "new permits" on the basis of an "adjudicatory hearing [that] w[ould] develop an entirely new factual record," <u>id.</u>, so too here, NOAA will award new comparability findings on the basis of notice and comment rulemaking addressing "successive application[s] . . . based on different facts than the preceding applications," Defs.' Reply at 2. As the Government notes, such subsequent applications might "reflect[] changes to marine mammal populations, commercial fishing technology, regulations of the United States, and the exporting country's regulations" as well as new scientific studies. <u>Id</u>. Because the court agrees with the D.C. Circuit's view that "[n]o purpose would be served in . . . reviewing the stale record of [an] earlier" comparability finding, Sea Shepherd's first and third objections are "stated in a form that is not capable of repetition, and [are] therefore moot." <u>Montgomery Env't Coal.</u>, 646 F.2d at 584.

Sea Shepherd's second objection -- that NOAA failed to exercise independent judgment in issuing the comparability determinations -- presents a more nuanced question, but is ultimately also moot. At base, this objection appears to allege that NOAA's "issuance of the comparability finding[s] was . . . biased." Pls.' Ren. PI Mot. at 35. Federal Circuit caselaw is instructive in this regard. For example, in <u>Galen Medical Associates, Inc. v. United States</u>, a disappointed bidder challenged the Veterans Affairs ("VA")'s award of a contract to another supplier, alleging bias and wrongful award of contract. 369 F.3d 1324, 1327 (Fed. Cir. 2004). Where the VA had already

elected to redo the selection process but continued to award the contract to the originally selected supplier, the Federal Circuit had to decide whether "complaints based on pre-corrective action events [we]re moot." Id. at 1333 (emphasis added). The court held that where such complaints were "charged as a specific violation of a code or statute," they were moot; but where such complaints were "relevant in order to establish a possible pattern of bias," they were not. Id.

As in Galen Medical, Plaintiffs here allege "a possible pattern of bias." Id.; see also Defs.' Reply at 4 (acknowledging that "Sea Shepherd . . . accuse[s] NOAA of being a rubber stamp for whatever New Zealand submits to the agency"). However, a critical difference is that unlike in Galen Medical -- where the VA had already awarded for a second time the contested contract to the original selectee -- here, NOAA has not yet awarded any subsequent comparability findings to New Zealand. Whether, upon evaluation of New Zealand's latest application, NOAA will continue to issue comparability findings, and whether Sea Shepherd will continue to hold the view that "NOAA failed to exercise independent judgment in issuing" any such replacement findings, "depends upon a chain of hypothesized actions." Ebanks, 877 F.3d at 1039 (deeming plaintiff's arguments "too attenuated and speculative to trigger the exception to mootness").[17]

---

[17] Plaintiffs invoke excerpts of New Zealand's pending application for comparability findings that cite to New Zealand's 2020 application as evidence that "it is reasonable to expect that NOAA will . . . [merely] repeat the same or similar flawed reasoning from its decision on New Zealand's 2020 Comparability Findings." Pls.' Resp. at 4 (citing Def.-Inter.'s Mot. to Modify PI Ex. C at 1). The court is unpersuaded by this argument.

As an initial matter, the excerpts Plaintiffs cite comprise five pages of New Zealand's pending application, a document that past experience suggests could be over 100 pages in full. Compare Def.-Inter.'s Mot. to Modify PI Ex. C at 1–4, i (five-page excerpt of New Zealand's pending comparability finding application), with Supplemental Administrative Record at 94–233, Nov. 23, 2020, ECF No. 44-9 (New Zealand's 140-page 2020 application). Where New Zealand's full, pending application is not on the record, the court cannot speculate as to the degree of overlap with New Zealand's prior application.

But even assuming arguendo a high degree of overlap in New Zealand's submissions, the court remains unpersuaded that Sea Shepherd's second objection is stated in a form that is capable of repetition. As noted, NOAA will conduct a fresh round of notice and comment rulemaking on

In short, where New Zealand's one-off comparability findings expired without replacement on January 1, 2023, Sea Shepherd's second objection -- that NOAA failed to exercise independent judgment in issuing the comparability determinations -- asks this court to "pronounc[e] that [Commerce's] past actions which have no demonstrable continuing effect were . . . wrong." Spencer v. Kenma, 523 U.S. 1, 18 (1998).  Because courts "are not in the business of" doing as such, id., Sea Shepherd's second objection is moot.[18]

Finally, Sea Shepherd's fourth objection -- that NOAA failed to undertake mandatory considerations -- presents a mix of live and moot questions.

Beginning with the moot elements, Plaintiffs overarchingly state that "in their third claim, [they] are challenging NOAA's application of the Imports Rule to the factual circumstances specific to this case by asking the Court to determine whether NOAA's comparability findings failed to comply with the express requirements of the Rule."  Pls.' Resp. to Ct.'s Qs. at 11, June 29, 2021, ECF No. 73 (emphasis added).  Where the United States does not contest that the Imports Regulation enumerates mandatory conditions that NOAA must consider in awarding comparability findings to foreign fisheries, see 50 C.F.R. § 216.24(h)(6)(iii), (h)(7); see also U.S.

---

whether to award new comparability findings to New Zealand, and the court cannot predict what impact any such attendant submissions might have on NOAA's determinations.  Moreover, the agency's future decision making will likely be informed by this court's prior review of NOAA's deliberative processes to date.  See, e.g., Sea Shepherd II, 606 F.Supp. 3d at 1310–23. Accordingly, because Sea Shepherd's argument "that NOAA will . . . [simply] repeat the same or similar flawed reasoning from its decision on New Zealand's 2020 Comparability Findings," Pls.' Resp. at 4, depends on "many contingencies," Plaintiffs "ha[ve] not shown a sufficiently reasonable expectation that [they] will again be subjected to the same action," Ebanks, 877 F.3d at 1039.

[18] Of course, such a conclusion does not preclude -- in the event that NOAA does subsequently issue additional comparability findings to New Zealand -- Plaintiffs' invocation of the now-expired comparability findings to reallege "a possible pattern of bias."  The court expresses no view on such contingent matters, except to note that in the absence of legally effective, replacement comparability findings, any such arguments are premature.

Gov't Resp. to Ct.'s Qs. at 6, June 29, 2021, ECF No. 71 (maintaining "NOAA evaluated [New Zealand's] Comparability Finding application in accordance with . . . 50 C.F.R. §§ 216.24(h)(6) and (7) as [it] does for all Comparability Finding applications"), Plaintiffs' fourth objection largely amounts to a challenge to NOAA's <u>particular</u> application of the regulatory criteria to the <u>particular</u> administrative record underlying the now-expired comparability findings.  Here too, because NOAA will award future comparability findings on the basis of new notice and comment rulemaking addressing new applications, <u>supra</u>, any such objections to the agency's "weighing of the factual evidence pertaining to a now-expired permit" are "stated in a form that is not capable of repetition, and [are] therefore moot," <u>Montgomery Env't Coal.</u>, 646 F.2d at 584.

All that said, aspects of Plaintiffs' challenge under the fourth objection are of a different quality, and thus remain live.  Specifically, parties disagree as to the meaning of certain criteria under 50 C.F.R. § 216.24(h)(6)(iii) and (h)(7).  For example, Plaintiffs argue that Defendants' interpretive position that the Imports Regulation does not require consideration of historical rates of marine mammal population decline in awarding comparability findings[19] contravenes the Imports Regulation's express terms.  Plaintiffs maintain:

> The Imports Rule states that the deciding official "shall" consider the "extent to which the harvesting nation has successfully implemented measures . . . to reduce incidental mortality and serious injury of each marine mammal stock below the bycatch limit."  50 C.F.R. § 216.24(h)(7)(ii).  The Rule also states that, where relevant, the decisionmaker should consider the population trend and "the history and nature of interactions with marine mammals in th[e] export fishery." <u>Id.</u> § 216.24(h)(7)(iv).  These factors necessarily require Federal Defendants to consider the historical rate of decline.

<u>See</u> Pls.' Combined Reply Br. in Supp. of Renewed Mot. for Prelim. Inj. and Resp. Br. in Opp. to Fed. Defs.' and Def.-Inter.'s Mots. to Dismiss at 31, Feb. 17, 2021, ECF No. 64.  Unlike Plaintiffs'

---

[19] <u>See, e.g.</u>, Defs.' Resp. in Opp. to PI at 38 (maintaining "[t]he historical rate of decline of the Māui dolphin population has no role in the calculation of [Potential Biological Removal] and is of little or no consequence when making comparability findings").

other objections, this interpretation-based argument challenges a "categorical legal stance" of Defendants.  Montgomery Env't Coal., 646 F.2d at 584.  Where New Zealand has already applied to NOAA for replacement comparability findings, see Joint Status Report at 1–2, the court determines that it is reasonably likely the agency will continue to adhere to its contested legal interpretation in reviewing these successive applications.  Thus, in this regard, Plaintiffs have lodged under their fourth objection a challenge that is "capable of repetition."

Having concluded that count three of Plaintiffs' Supplemental Complaint alleges at least some "errors that are liable to be repeated," id. at 580 n.6, the court next considers whether the comparability findings are "too short to be fully litigated prior to [their] expiration,'" Ebanks, 877 F.3d at 1038–39 (quoting Kingdomware Techs., Inc., 579 U.S. at 170).

### B.    Evading Review

By "evading review," "the Supreme Court has meant evading Supreme Court review," Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F.2d 365, 369–70 (D.C. Cir. 1992) (citing Neb. Press Ass'n v. Stuart, 427 U.S. 539, 547 (1976)), and has previously held that, at least in some scenarios, "a period of two years is too short to complete judicial review," Kingdomware Techs., Inc., 579 U.S. at 170.

New Zealand's now-expired comparability findings were in place for just over two years. See Comp. Finding Determ. at 71297 ("These comparability findings are valid for the period of November 6, 2020, through January 1, 2023, unless revoked.").  While NOAA's Imports Regulation suggests that comparability findings issued in the ordinary course "shall remain valid for 4 years," 50 C.F.R. § 216.24(h)(8)(iv), the court assesses that even four years is "in its duration too short" for "full[] litigat[ion] prior to [their] expiration.'" Ebanks, 877 F.3d at 1038–39 (quoting Kingdomware Techs., Inc., 579 U.S. at 170).

The court so concludes in light of the particular procedural history of the case at bar. Plaintiffs filed their Original Complaint in this action on May 21, 2020.  See Original Compl. Accounting for the various substantive motions already filed and adjudicated,[20] three years have since passed and this court of first instance has not yet had occasion to pass on the merits.  Where parties have previously identified twenty specific challenges to NOAA's issuance of comparability findings, see, e.g., Def.-Inter.'s Resp. Br. at 16–47 (rebuttal by New Zealand of twenty specific challenges to the now-expired comparability findings), an "individualistic[] and . . . intuitive[] appraisal of the facts of [this] case," Wright & Miller, supra note 13, § 3533, suggests that four years is too short a period for this case to reach the Federal Circuit, let alone the Supreme Court, and for judicial review to conclude.

**CONCLUSION**

In sum, although the expiry of New Zealand's comparability findings has mooted Plaintiffs' request for injunctive relief under the third count of their Supplemental Complaint, certain aspects of Plaintiffs' request for declaratory relief are "capable of repetition, yet evading review," and thus remain live.  Because "even the availability of a 'partial remedy' is 'sufficient to prevent [an issue] from being moot,'" Chafin, 568 U.S. at 177 (quoting Calderon, 518 U.S. at 150), for the foregoing reasons, the court denies Defendants' Partial Motion to Dismiss.

It is hereby:

**ORDERED** that the United States' Partial Motion to Dismiss, ECF No. 132, is denied; and

---

[20] See, e.g., Pls.' Mot. for a Prelim. Inj. on First Cl. for Relief, July 1, 2020, ECF No. 11; U.S. Gov't Partial Consent Mot. to Remand Case, July 17, 2020, ECF No. 17; Ct. Order Granting Defs.' Mot. for Voluntary Remand, Aug. 13, 2020, ECF No. 39; Pls.' Ren. PI Mot.; Defs.' Mot. to Dismiss Count I; Def.-Inter.'s Mot. to Dismiss Count I; Pls.' Mot. for Leave to Suppl. Evid. R. on Ren. Mot. for Prelim. Inj., Sept. 13, 2021, ECF No. 81; Defs.' Second Remand Mot.; Def.-Inter.'s Mot. to Modify PI; Def.-Inter.'s Mot. to Suppl. R. in Supp. of Mot. to Modify Prelim. Inj., Dec. 13, 2022, ECF No. 121; Defs.' Mot. to Dismiss Count III.

Court No. 20-00112                                                                                Page 24

it is further

      **ORDERED** that the Parties shall confer and submit to the court by no later than July 7, 2023 a proposed scheduling order for briefing on the merits in this action.

      **SO ORDERED.**

                                      */s/   Gary S. Katzmann*
                                      Gary S. Katzmann, Judge

Dated: June 21, 2023
         New York, New York