Slip Op. 24-101

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND and SEA SHEPHERD CONSERVATION SOCIETY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES; GINA M. RAIMONDO, *in her official capacity as Secretary of Commerce*; UNITED STATES DEPARTMENT OF COMMERCE; JANET COIT, *in her official capacity as Assistant Administrator of the National Marine Fisheries Service*; NATIONAL MARINE FISHERIES SERVICE; JANET YELLEN, *in her official capacity as Secretary of the Treasury*; UNITED STATES DEPARTMENT OF THE TREASURY; ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Homeland Security*; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants,<br><br>and<br><br>NEW ZEALAND GOVERNMENT,<br><br>Defendant-Intervenor. | Before:  Gary S. Katzmann, Judge<br>Court No. 20-00112 |

**OPINION AND ORDER**

[ The Parties' Stipulation and Proposed Order of Voluntary Dismissal with Prejudice was filed under USCIT Rule 41(a)(1)(A)(ii).  The proposed order is issued, and the case is dismissed. ]

Dated: <u>September 11, 2024</u>

<u>Lia Comerford</u>, Earthrise Law Center at Lewis & Clark Law, of Portland, OR, for Plaintiffs Sea Shepherd New Zealand and Sea Shepherd Conservation Society.

Stephen C. Tosini, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendants United States, Gina M. Raimondo, in her official capacity as Secretary of United States Department of Commerce; Janet Coit, in her official capacity as Assistant Administrator of her the National Marine Fisheries Service; National Marine Fisheries Service; Janet Yellen, in her official capacity as Secretary of Treasury United States Department of the Treasury; Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security; and United States Department of Homeland Security.  With him on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director.  Of counsel was Jason S. Forman, Office of the General Counsel, National Oceanic and Atmospheric Administration, of Silver Spring, MD.

Warren E. Connelly, Robert G. Gosselink and Kenneth N. Hammer of Trade Pacific PLLC, of Washington, D.C., for Defendant-Intervenor New Zealand Government.

Katzmann, Judge:  The court returns to the case of the critically endangered Māui dolphin—one of the world's smallest dolphins—that is endemic to the waters of New Zealand. See Sea Shepherd N.Z. v. United States ("Sea Shepherd I"), 44 CIT __, 469 F. Supp. 3d 1330 (2020), ECF No. 38; Sea Shepherd N.Z. v. United States ("Sea Shepherd II"), 46 CIT __, 606 F. Supp. 3d 1286 (2022), ECF No. 108; Sea Shepherd N.Z. v. United States ("Sea Shepherd III"), 47 CIT __, 611 F. Supp. 3d 1406 (2023), ECF No. 131; Sea Shepherd N.Z. v. United States ("Sea Shepherd IV"), 47 CIT __, 639 F. Supp. 3d 1367 (2023), ECF No. 136; Sea Shepherd N.Z. v. United States ("Sea Shepherd V"), 48 CIT __, 693 F. Supp. 3d 1364 (2024), ECF No. 153.  Sea Shepherd New Zealand and Sea Shepherd Conservation Society ("Plaintiffs") initiated this lawsuit in 2020 with the fundamental claim that as a result of incidental capture ("bycatch") in gillnet and trawl fisheries within their range, the Māui dolphin population is declining such that a U.S. ban on importing certain fish and fish products from New Zealand is required by the Marine Mammal Protection Act ("MMPA").  See First Supp. Compl. ¶¶ 1–4, Nov. 24, 2020, ECF No. 46.  Defendants the United States and constituent agencies and officials ("United States") and Defendant-Intervenor New Zealand Government ("New Zealand") have long opposed Plaintiffs' central claim, maintaining that New Zealand's standards satisfy the MMPA.

The stakes of this case are high. With only 43 remaining dolphins by recent estimates,[1] the Māui dolphin is on the brink of extinction. As discussed in greater detail below, developments over years of litigation in this case have reflected the parties' collective view of the urgency of the situation. In November 2022, the court issued a preliminary injunction banning the importation of certain fish products from New Zealand. The court lifted that injunction after the U.S. National Oceanic and Atmospheric Administration ("NOAA") found in January 2024 that "effective for the period from February 21, 2024, through December 31, 2025, New Zealand had established that its fisheries' measures for reducing the bycatch of Māui dolphins satisfy the provisions of the MMPA." Sea Shepherd V, 693 F. Supp. 3d at 1367. The court did so on the motion of New Zealand, with the consent of the United States, and with no opposition by Plaintiffs.

The parties have now filed a joint stipulation of dismissal with prejudice under USCIT Rule 41. See Stipulation and Proposed Order of Voluntary Dismissal ("Notice of Dismissal"), August 23, 2024, ECF No. 162. The case is accordingly dismissed by operation of the parties' Notice of Dismissal. The court retains jurisdiction to enforce fees and costs.

## BACKGROUND

Recognizing the seriousness of the interests at stake, the court pauses to recount the history of the litigation and outline the current state of affairs. In doing so, the court presumes familiarity with the background of this litigation as outlined in prior opinions. See Sea Shepherd I, 469 F. Supp. 3d 1330; Sea Shepherd II, 606 F. Supp. 3d 1286; Sea Shepherd III, 611 F. Supp. 3d 1406; Sea Shepherd IV, 639 F. Supp. 3d 1367; Sea Shepherd V, 693 F. Supp. 3d 1364. The court here summarizes the main developments in this case's history before discussing the stipulated dismissal before the court.

---

[1] See infra note 10 and accompanying text.

Court No. 20-00112                                                                                                           Page 4

### I.     Factual Background

The court begins with a summary of the relatively few undisputed facts. The critically endangered Māui dolphin is endemic to the waters around New Zealand's North Island. See First Suppl. Compl. ¶ 51, Nov. 24, 2020, ECF No. 46 ("First Suppl. Compl."); see also N.Z. Gov't Answer to Compl. ¶ 39, July 15, 2020, ECF No. 14 ("N.Z. Answer"). It is the northernmost-located subspecies of the more populous Hector's dolphin, from which the Māui dolphin is morphologically indistinguishable and differentiable only by DNA sequence. See First Suppl. Compl. ¶ 52. Out of the more than thirty species of dolphin in the world's oceans, Māui and Hector's dolphins are the smallest in the world.[2]

The parties all stress that the Māui dolphin's situation is precarious. Beyond that, they have largely disagreed in this litigation as to the more granular details of the dolphin's current abundance, its range, and the extent of the threat posed to it by fishing. See Sea Shepherd II, 606 F. Supp. 3d at 1297–98 (describing the differences in views).

It is clear, however, that commercial fishing, particularly set net and trawl fishing,[3] poses at least a major threat to the Māui dolphin's continued survival. In 1999, the New Zealand Minister of Conservation designated the Māui dolphin as a "threatened species," and the Māui dolphin is defined as a "protected species" under New Zealand law. See First Suppl. Compl. ¶ 71. Since 2003, New Zealand has enacted some restrictions on gillnet and trawl fishing in the Māui dolphin's range. See First Suppl. Compl. ¶ 60; N.Z. Answer ¶ 47. In 2007, New Zealand introduced a Threat

---

[2] See Facts About Hector's & Māui Dolphin, N.Z. Dep't of Conservation, www.doc.govt.nz/nature/native-animals/marine-mammals/dolphins/maui-dolphin/facts/ (last visited Sept. 10, 2024).

[3] Set nets, also known as gillnets, "are a type of non-selective fishing net that is hung vertically in the water for hours or . . . days . . . to harvest marine fish and other species." First Suppl. Compl. ¶ 56. "Trawl fishing is another type of indiscriminate fishing method whereby . . . boats drag a large net through the water column, catching almost everything in the net's path." Id.

Management Plan ("TMP") to manage human-induced threats to Hector's, and by extension, Māui dolphins. See Hector's and Māui's Dolphin Threat Mgmt. Plan Draft for Pub. Consult. at 8 (N.Z. Gov't Aug. 29, 2007), AR4614; First Suppl. Compl. ¶ 73; N.Z. Answer ¶ 60.

Despite those efforts, a group of experts submitted a report to the International Whaling Commission ("IWC")[4] Scientific Committee in 2017 that calculated the Māui dolphin's potential biological removal level ("PBR").[5] See First Suppl. Compl. ¶ 57. That study indicated that in order for the Māui dolphin's stock to reach or maintain its optimum sustainable level, the subspecies can sustain the human-induced loss of only one individual roughly every 20 years. Id. According to another 2019 study considered by the IWC, the estimated mean annual bycatch mortality for Māui dolphins in recent years was 1.8 to 2.4 individuals per year. See id. ¶ 58. That bycatch mortality rate vastly exceeded the PBR estimated by the 2017 report. Plaintiffs also argued that New Zealand's TMP since 2007 fell far short of a recommendation by the International Union for the Conservation of Nature ("IUCN") to ban gill net and trawl net use from the shoreline to the 100-meter depth contour off the North Island within the Māui dolphin's range, which Plaintiffs maintained included the waters off both the west and east coasts of the island. See id. ¶ 58.

New Zealand initiated a process to revise its TMP for Hector's and Māui dolphins in 2018. See First Suppl. Compl. ¶ 80; N.Z. Answer ¶¶ 44, 67. Throughout this litigation New Zealand has disputed, among other facts, the IWC study's estimation of the PBR, the ongoing mortality rate,

---

[4] "The IWC was established in 1946 as the global body responsible for the management of whaling and conservation of whales. It is an inter-governmental organisation with a current membership of 88 governments," including the United States and New Zealand. See Commission Overview, Int'l Whaling Comm'n, iwc.int/commission (last visited September 10, 2024).

[5] PBR refers to the "maximum number of animals, not including natural mortalities, that may be removed from a marine mammal stock while allowing that stock to reach or maintain its optimum sustainable population." 16 U.S.C. §§ 1362(20), 1386(a)(6).

the attribution of deaths exclusively to fishing, and the purported range of the Māui dolphin. See Sea Shepherd II, 606 F. Supp. 3d at 1297–98.

## II.     Legal Background and Procedural History

Creating with certain exceptions a "moratorium on the taking and importation of marine mammals and marine mammal products," the MMPA aims to protect marine mammals by setting U.S. standards applicable both to domestic commercial fisheries and to foreign fisheries that wish to export their products to the United States.[6]  16 U.S.C. § 1371(a).  The MMPA requires the Secretary of the Treasury to ban the "importation of commercial fish or products from fish which have been caught with commercial fishing technology which results in the incidental kill or incidental serious injury of ocean mammals in excess of United States standards." See id. § 1371(a)(2).  To determine whether such fish or fish products result in harm in excess of United States standards, the NOAA Imports Regulation requires foreign harvesting nations to secure "comparability findings" for their fisheries importing fish and fish products into the United States. See 50 C.F.R. §§ 216.24(h)(1)(i), 216.3.  Any subject fish or fish product harvested in a fishery for which a valid comparability finding is not in effect is unlawful to import.  See id. § 216.24(h)(1)(ii)(A).

On February 6, 2019, Plaintiffs submitted a formal petition to the U.S. Departments of Homeland Security, Treasury, and Commerce requesting that those agencies invoke their

---

[6] This court has resolved similar litigation involving the MMPA's applicability to the critically endangered vaquita, the world's smallest porpoise, of which only 13 individuals are estimated to remain.  See Nat. Res. Def. Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1338 (2018); Nat. Res. Def. Council, Inc. v. Ross, 42 CIT __, 331 F. Supp. 3d 1381 (2018); Nat. Res. Def. Council, Inc. v. Ross, 42 CIT __, 348 F. Supp. 3d 1306 (2018); Nat. Res. Def. Council, Inc. v. Ross, 774 F. App'x 646 (Fed. Cir. 2019); Nat. Res. Def. Council, Inc. v. Ross ("NRDC IV"), 44 CIT __, 456 F. Supp. 3d 1292 (2020); see also Ctr. for Bio. Diversity v. Haaland, 47 CIT __, 639 F. Supp. 3d 1355, 1363 (2023).

rulemaking authority arising out of the MMPA to ban the importation of fish and fish products originating from New Zealand fisheries in the Māui dolphin's range that employ either gill nets or trawls. See Pls.' Initial Māui Dolphin Pet. at 3, 12 (Feb. 6, 2019), AR0001 ("Initial Petition"). Plaintiffs urged immediate action because, "[c]ontrary to the MMPA, the United States, through the actions and omissions of the Agencies, currently allows the importation of fish and fish products from New Zealand fisheries that kill and injure critically endangered Māui dolphins in excess of United States standards." Id. at 3–4. On July 10, 2019, NOAA rejected Plaintiffs' Initial Petition, determining that New Zealand's TMP was comparable to U.S. standards. See Notification of the Rejection, 84 Fed. Reg. 32853 (Dep't Com. July 10, 2019), AR5426.

On May 21, 2020, Plaintiffs filed their initial Complaint, which asserted two claims challenging NOAA's denial: (1) that NOAA unlawfully withheld or unreasonably delayed agency action in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), by failing to ban the import of commercial fish and products from fish caught using gillnet and trawls in the Māui dolphin's range in excess of U.S. standards; and (2) that NOAA's denial of Plaintiffs' petition for emergency rulemaking was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A). See Original Compl. ¶¶ 84–88, 89–94. Separately, on June 24, 2020, New Zealand announced new domestic fishing measures intended to reduce Māui dolphin bycatch, which were the result of its review of TMP programs beginning in 2018. See N.Z. TMP Letter at 1.

On July 1, 2020, Plaintiffs moved for a preliminary injunction embargoing the importation of certain fish products from New Zealand into the United States. See Pls.' Mot. for a Prelim. Inj., July 1, 2020, ECF No. 11. As part of their motion, Plaintiffs argued that New Zealand's new measures still fell short of comparable U.S. standards. See id. at 16. On July 15, 2020, New

Zealand instead requested that NOAA perform a comparability assessment for two fisheries—the West Coast North Island inshore trawl and inshore set net fisheries—pursuant to NOAA's Imports Regulation. See Letter from N.Z. to U.S. Dep't of Com., re: Comparability Finding Request (July 15, 2020), ECF No. 17-2. The United States accordingly moved for a voluntary remand for NOAA to reconsider the denial of Plaintiffs' petition and to consider New Zealand's request for comparability findings. See U.S. Gov't Partial Consent Mot. to Remand Case, July 17, 2020, ECF No. 17. The court granted the motion and remanded the petition for reconsideration with an opportunity for Plaintiffs to supplement their original petition. See Sea Shepherd I, 469 F. Supp. 3d at 1337–38.

On August 27, 2020, Plaintiffs submitted a supplemental petition to NOAA. See Pls.' Aug. 27, 2020 Suppl. Māui Dolphin Pet. at 5 (Aug. 27, 2020), SUPP0005 ("Supplemental Petition"). The Supplemental Petition broadened the requested ban, now including "the import of all fish and fish products originating from fisheries in the entirety of the Māui dolphin's current and historical range, which includes the entire coastline of the North Island out to the 100m depth contour, that employ either set nets or trawls." Plaintiffs argued that these measures were necessary to meet U.S. standards and that, if not implemented, an embargo of all such fish and fish products was required by the MMPA. Id. at 3, 12–13, 15.

On November 9, 2020, NOAA published its denial of Plaintiffs' Supplemental Petition and issued comparability findings for New Zealand's two relevant fisheries. See Notification of Rejection of Petition and Issuance of Comparability Findings, 85 Fed. Reg. 71297, 71297 (Dep't Com. Nov. 9, 2020), SUPP0001 ("First Comparability Findings"). It reasoned that New Zealand's "regulatory program, implemented on October 1, 2020, will in all likelihood reduce Māui dolphin bycatch below PBR"—which NOAA calculated to allow one death every eight years—and was

otherwise comparable in effectiveness to U.S. standards. See First Comparability Findings, 85 Fed. Reg. at 71298. NOAA also rejected Plaintiffs' broad definition of the Māui dolphin's habitat and limited it to the "west coast of the North Island." See Dec. Mem. attach. A at 6. The issued comparability findings would remain in effect through January 1, 2023. See First Comparability Findings, 85 Fed. Reg. at 71297.

On November 24, 2020, Plaintiffs filed the Supplemental Complaint, which restated the initial two claims and added a third claim that NOAA's First Comparability Findings were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A). See Suppl. Compl. ¶¶ 117–121.[7] Plaintiffs later filed a Renewed Motion for Preliminary Injunction on December 11, 2020, again requesting an embargo. See Pls.' Ren. PI Mot. The United States and New Zealand also moved to dismiss Plaintiffs' first claim. See U.S. Mot. to Dismiss, Jan. 27, 2021, ECF No. 58; N.Z. Mot. to Dismiss, Jan. 15, 2021, ECF No. 56. Separately, anticipating the expiration of the First Comparability Findings, New Zealand submitted an application to NOAA on November 30, 2021, requesting new comparability findings for all of its fisheries—including the two fisheries at issue in this case—for the period following January 1, 2023. See Joint Status Report, Jan. 7, 2022, ECF No. 90.

On November 28, 2022, the court granted Plaintiffs' motion and issued a preliminary injunction banning the importation of fish and fish products deriving from nine fish species caught in New Zealand's West Coast North Island inshore trawl and set net fisheries, unless affirmatively identified as having been caught with a gear type other than gillnets or trawls. See Sea Shepherd II, 606 F. Supp. 3d at 1331; see also Order, Nov. 28, 2022, ECF No. 109. The court concluded

---

[7] The court notes an apparent typographical error in the paragraph numbering in Plaintiffs' First Supplemental Complaint. Compare First Suppl. Compl. at 34–36, with id. at 37–38 (repeating paragraph numbers). The citations to paragraphs herein reflect numbering retabulated by the court.

that Plaintiffs were likely to succeed on the merits of their second and third claims, that irreparable harm to the Māui dolphin was likely absent an injunction, and that the balance of hardships weighed in Plaintiffs' favor.  Id.  As for the first claim, the court granted the United States's and New Zealand's motions to dismiss for failure to state a claim arising under 5 U.S.C. § 706(1).  See id. at 1309–10.  NOAA's denial of the Initial Petition was not a failure to act under 5 U.S.C. § 706(1), as Plaintiffs argued, but rather an affirmative agency action of denial that was more properly challenged by Plaintiffs' second claim under 5 U.S.C. § 706(2).  See id.

Shortly thereafter on December 6, 2022, New Zealand moved to modify the preliminary injunction to allow for a grace period to implement a traceability system.[8]  See Sea Shepherd III, 611 F. Supp. 3d at 1408.  The court denied the motion on January 9, 2023, reasoning that New Zealand had not established a change of circumstances that would make the continuation of the original injunction inequitable.  Id. at 1410.  Then, in light of the expiration of the First Comparability Findings on January 1, 2023, the United States moved to dismiss as moot Plaintiffs' third claim.  See U.S. Mot. to Dismiss, Feb. 2, 2023, ECF No. 132.  On June 21, 2023, the court denied that motion, concluding that aspects of Plaintiffs' request for declaratory relief under the third claim remained live.  See Sea Shepherd IV, 639 F. Supp. 3d at 1371.

Following that decision, the parties jointly moved to stay litigation in the case.  See Joint Mot. for Stay of Litig., July 7, 2023, ECF No. 137.  In that motion, the parties stated their view that "NMFS' decision on the pending comparability applications may obviate, in whole or in part, the need for continued litigation in this action."  Id. at 2.  The court then stayed this litigation NOAA issued its decision on New Zealand's pending comparability finding applications for New

---

[8] The phrase "traceability system" referred to procedures that would have certified that exports of New Zealand fish and fish products to the United States were not of the kind prohibited by the preliminary injunction.  See Sea Shepherd III, 611 F. Supp. 3d at 1408 n.4.

Zealand's North Island West Coast Fisheries. Order ¶ 1, July 14, 2023, ECF No. 138. At the time, NMFS was expected to issue the pending comparability findings relevant to this case by November 30, 2023. The NMFS later extended the MMPA exemption period by two years to end on December 31, 2025, meaning that NMFS had until November 30, 2025, to issue the pending comparability findings relevant to this case. See Modification of Deadlines Under the Fish and Fish Product Import Provisions of the Marine Mammal Protection Act, 88 Fed. Reg. 80193, 80194 (Dep't Com. Nov. 17, 2023); 50 C.F.R. § 216.24(h)(6)(ii).

On January 24, 2024, NOAA published a new set of comparability findings covering the two fisheries at issue in this case. See Implementation of Fish and Fish Product Import Provisions of the Marine Mammal Protection Act—Notification of Issuance of Comparability Findings, 89 Fed. Reg. 4595 (Dep't Com. Jan. 24, 2024) ("Second Comparability Findings"). NOAA stated that it had reconsidered the First Comparability Findings, "based on supplemental information provided by Plaintiffs and New Zealand since that time," and again concluded that New Zealand's revised TMP of October 2020 was comparable in effectiveness to U.S. standards. Id. at 4596–97. NOAA noted that since the 2020–2021 fishing year, "fishing effort has been reduced by 71 percent for the trawl fleet and 97 percent for the set net fleet," and "50 percent of trawl effort and 90 percent of set net effort were monitored." Id. at 4596. Ultimately, NOAA concluded, New Zealand's TMP "will result in Māui dolphin bycatch below PBR and concentrate the fisheries restrictions in the areas with the greatest risk, specifically those areas where fishing activities overlap with the Māui dolphin population." Id. at 4597. The Second Comparability Findings are valid until December 31, 2025.

On March 19, 2024, New Zealand moved to dissolve the preliminary injunction. See N.Z. Unopposed Mot. to Dissolve the Prelim. Inj., Mar. 19, 2024, ECF No. 152. Plaintiffs did not

oppose, and the United States consented to, the dissolution of the preliminary injunction. See id. at 2. The court concluded that NOAA's issuance of the Second Comparability Findings constituted a "significant change in [the] factual conditions and law" underlying the preliminary injunction and dissolved the injunction. Sea Shepherd V, 693 F. Supp. 3d at 1367.

Plaintiffs have since moved for extensions of the stay, with the consent of the United States and New Zealand, in order to negotiate the case's stipulated dismissal and resolve any claims for attorneys' fees and costs. See Pls.' Status Report & Consent Mot. to Extend the Stay ¶ 1, July 22, 2024, ECF No. 160. Regarding the status of their second and third claims in the Supplemental Complaint, Plaintiffs have stated:

> In light of NOAA's issuance of the new comparability findings for New Zealand's West Coast North Island multi-species set-net and trawl fisheries . . . , Plaintiffs' third claim for relief (challenging NOAA's October 26, 2020 comparability finding) is likely moot. Plaintiffs are not going to challenge the new comparability findings or further pursue their second claim for relief (challenging NOAA's denials of Plaintiffs' Petitions). As such, once Plaintiffs and Defendants resolve Plaintiffs' request for attorneys' fees and costs, the Parties intend to submit a proposed stipulated dismissal of the case.

Id. ¶ 5. The court granted the motions extending the stay to allow for the case's resolution. See Order, July 24, 2024, ECF No. 161; Order, June 21, 2024, ECF No. 159; Order, May 20, 2024, ECF No. 155; Order, Mar. 13, 2024, ECF No. 151.

## DISCUSSION

On August 23, 2024, the parties filed a joint stipulation of dismissal with prejudice under USCIT Rule 41. See Notice of Dismissal. On September 9, 2024, the parties filed a copy of their settlement agreement. See Settlement Agreement, Sept. 9, 2024, ECF No. 165. Under the terms of the stipulated dismissal and the settlement agreement, this action will be dismissed with prejudice and the United States will pay to Plaintiffs $375,000.00 in attorneys' fees and costs, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). See id; Notice of Dismissal.

Case 1:20-cv-00112-GSK   Document 167   Filed 09/11/24   Page 13 of 16

Under USCIT Rule 41, a plaintiff "may dismiss an action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared." USCIT R. 41(a)(1)(A)(ii). The court held a conference on September 10, 2024. During that conference, the parties provided an overview of the preceding litigation and confirmed their intention to dismiss this action with prejudice. See Status Conference.[9] The court retains jurisdiction to enforce the United States's payment obligations under the parties' agreement on attorneys' fees and costs associated with this case. To be clear, this opinion does not preclude future legal challenges to the Second Comparability Findings. Nor does the court suggest any view on the Second Comparability Findings.

The case's dismissal is issued below, and this case is now closed. But the fate of the Māui dolphin is not so easily resolved. Recent estimates indicate that approximately forty-three dolphins remain, and their population has declined at the rate of 3 to 4 percent per year between 2001 and 2021.[10] Today's disposition, then, is far from bill of health for a species teetering on the brink of extinction. As the court noted in prior litigation involving the similarly critically endangered vaquita, see supra note 6, the loss of a species represents a "loss of biodiversity, unique evolutionary history, and the potential for future evolution." NRDC IV, 456 F. Supp. 3d at 1294.

It can be noted that the outcome here reflects the efforts of Plaintiffs, the United States,

---

[9] The audio recording of the status conference is available to the public on the website of the U.S. Court of International Trade. See Audio Recordings of Select Public Court Proceedings, U.S. Ct. of Int'l Trade, https://www.cit.uscourts.gov/audio-recordings-select-public-court-proceedings (last visited Sept. 10, 2024).

[10] See R. Constantine, IUCN, The IUCN Red List of Threatened Species: Cephalorhynchus hectori ssp. maui 1 (2023), https://www.iucnredlist.org/species/39427/50380174 (last visited Sept. 10, 2024); Mem. from A. Cole to J. Coit, re: Issuance of Comparability Findings for the Government of New Zealand's Set-Net and Trawl Fisheries—Decision Memorandum at 2 (NOAA Jan. 2, 2024), ECF No. 144-2.

and New Zealand as they all work within complex domestic and transnational legal frameworks to avert catastrophe. At stake is nothing less than the survival of the Māui dolphin, which cannot be replaced.

## CONCLUSION

A voluntary dismissal by joint stipulation under Rule 41(a)(1)(A)(ii) is effective "automatically." Versata Software, Inc. v. Callidus Software, Inc., 780 F.3d 1134, 1136 (Fed. Cir. 2015). The Order of Voluntary Dismissal is granted as requested, and is issued below.

**SO ORDERED.**

/s/     Gary S. Katzmann
Judge

Dated: September 11, 2024
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SEA SHEPHERD NEW ZEALAND and SEA SHEPHERD CONSERVATION SOCIETY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES; GINA M. RAIMONDO, *in her official capacity as Secretary of Commerce*; UNITED STATES DEPARTMENT OF COMMERCE; JANET COIT, *in her official capacity as Assistant Administrator of the National Marine Fisheries Service*; NATIONAL MARINE FISHERIES SERVICE; JANET YELLEN, *in her official capacity as Secretary of the Treasury*; UNITED STATES DEPARTMENT OF THE TREASURY; ALEJANDRO MAYORKAS, *in his official capacity as Secretary of Homeland Security*; and UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> Defendants, <br><br> and <br><br> NEW ZEALAND GOVERNMENT, <br><br> Defendant-Intervenor. | Before: Gary S. Katzmann, Judge <br> Court No. 20-00112 |

**ORDER OF VOLUNTARY DISMISSAL UNDER USCIT RULE 41(a)(2)**

This matter came before the court on a Stipulation and Proposed Order of Voluntary Dismissal Under USCIT R. 41(a)(2), filed jointly by Plaintiffs Sea Shepherd New Zealand and Sea Shepherd Conservation Society, (together, Plaintiffs); Defendants, United States, et al.; and Defendant-Intervenor, the Government of New Zealand.  The Stipulation and Proposed Order present terms that the Court deems proper.  It is hereby **GRANTED AS REQUESTED**, and this

matter is dismissed with prejudice.  The Court retains jurisdiction to enforce Defendants' obligations under the Parties' agreement on attorneys' fees and costs associated with this case.

    **SO ORDERED.**

                                                                 /s/    *Gary S. Katzmann*
                                                                                     Judge

Dated: September 11, 2024
         New York, New York